RUTH M. PITKETHLY, PETITIONER-APPELLANT, v. CITY OF PATERSON, RESPONDENT-RESPONDENT.

Argued May 4, 1953—Decided June 22, 1953.

*Mr. Isadore Rabinowitz* argued the cause for the appellant (*Mr. Nathan Rabinowitz*, attorney).

*Mr. Arthur F. Meade* argued the cause for the respondent (*Messrs. Cox & Walburg*, attorneys).

The opinion of the court was delivered by

BURLING, J. This is a workmen's compensation case. The subject claim had been dismissed by the Division of Workmen's Compensation, Department of Labor and Industry, State of New Jersey, and the Passaic County Court had subsequently entered judgment for the respondent City of Paterson (hereinafter called the city). The petitioner-appellant, Ruth M. Pitkethly (hereinafter called the plaintiff) appealed to the Superior Court, Appellate Division, and the judgment of the County Court was there affirmed. The plaintiff thereupon petitioned for certification which was allowed. 11 *N. J.* 331 (1952).

The dependent's claim petition filed by the plaintiff, instituting this action, sought compensation for the death of her husband, Walter P. Pitkethly, a fireman in the city's employ, which had occurred at the scene of a fire in Paterson on February 20, 1950. The cause of death was coronary occlusion.

The question involved in this appeal is: Was the plaintiff's husband's death the result of an accident arising out of and in the course of his employment with the defendant?

This opinion is addressed solely to the disposition of the factual inquiry whether a causal connection existed between the death of the plaintiff's decedent and his employment. It is grounded in the proposition that the result attained is so whether or not evidence of "unusual strain" is a *sine qua*

*non* to the plaintiff's burden of proof of compensable injury in a case in which the decedent's death occurred as a result of a form of cardiac failure. Under this circumstance no declaration is made by the court upon the incidental questions argued relative to the philosophy of "unusual strain" evidence.

The evidence in this case shows that the deceased (hereinafter referred to as Pitkethly) had been a regular member of the fire department of the city for many years. He was 52 years of age and had served 27 years with one company, Engine Company No. 10. He received an appointment as a battalion chief's aide on January 1, 1950. In the latter capacity his duties included acting as the battalion chief's driver, checking on the battalion chief's car and its motor and emergency equipment and keeping it clean; driving the battalion chief to the scene of a fire and passing the battalion chief's instructions to apparatus captains at the scene, and also at the scene the doing of such acts, including inspection of the condition of premises involved, as he might be directed to do by the battalion chief.

On February 8 and 14, 1950 Pitkethly had accompanied Battalion Chief Titus, one of the claimant's witnesses, to fires. On February 20, 1950 they went to a fire in the morning and then returned to quarters. At 8:23 p. m. on that day a further alarm was received to which the chief and his aide responded, arriving at the scene about 8:26. The location of the fire was "approximately a mile" from the battalion chief's headquarters. Although traffic was encountered, Chief Titus testified "we drove to the fire with no undue confusion or circumstances," driving "between fast and slow."

At the scene, the chief hastened across the street, Pitkethly with him. A captain reported to Chief Titus. His men were already in the process of running a small (one-inch) booster hose into the premises (a store). Chief Titus entered the store, saw "excessive" smoke, but observed that the fire was confined to the kitchen and could be handled by the booster hose. He immediately directed Pitkethly to

go through the building to determine whether the fire had extended to the upper floors. Chief Titus next saw Pitkethly in the street, where the latter reported to him at which time he was "breathing heavily." Pitkethly had spent "hardly any" time in the store.

A tenant of the second floor testified that there were five rooms on the second floor, "about the same" on the third. The stairs (which had a street entrance separate from the store) were "normal," neither curved nor steep. This tenant saw Pitkethly go through her rooms (in which there "was a little smoke and the smell from it"). The tenant's mother remained in the apartment at all times. The witness did not know whether Pitkethly went to the third floor.

A police detective testified that when Pitkethly walked out of the store he answered "all right" to a general question as to his health, and walked into the other doorway, the entrance upstairs. Fifteen or twenty minutes later Pitkethly returned and engaged in conversation with the detective. The conversation related to a supper contemplated for a "fire-exempt home." Then Pitkethly who looked "tired" "hollered 'oh'" and the detective caught him to prevent a fall. Pitkethly was then carried into an adjacent shop, and an ambulance was summoned. After the arrival of the ambulance five to eight minutes later, Pitkethly was "worked over" by a doctor and later the doctor said there was no life left.

The death certificate showed that Pitkethly died of a coronary occlusion. Dr. Kleiner testified that his opinion that the death was attributable to the employment was based upon circumstances that the deceased raced to the fire, ran up two flights of stairs, and the corridors were filled with smoke. The evidence does not support these basic factors. On the other hand it supports a finding that the deceased fireman did not hasten in the performance of his duties in examining the second floor of the building. Dr. Kleiner admitted that an occlusion is not something that comes on suddenly and may take an hour or two hours, and that his opinion as to its cause in this case was "mere speculation."

He testified that an occlusion may occur when a man is sitting in a chair or lying in bed, and that Pitkethly undoubtedly had an arterio-sclerotic background. Dr. Yager testified that there was no relationship between this man's death and what he was doing at the time, and that the death was coincidental.

Plaintiff has not sustained the burden of proof that her decedent's death was the result of an injury by accident arising out of and in the course of his employment. The evidence here is not sufficient to overcome the presumption that the fatal end was the consequence of disease, *i. e.*, natural causes, alone.

For the reasons expressed in this opinion the judgment of the Superior Court, Appellate Division, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Justices HEHER, JACOBS and BRENNAN—3.