AXEL NELSON, PETITIONER-RESPONDENT, v. MEEKER FOUNDRY COMPANY, RESPONDENT-APPELLANT.

Argued March 17, 1959—Reargued May 18, 1959—
Decided June 17, 1959.

*Mr. Edward B. Meredith* argued the cause for the respondent-appellant.

*Mr. John A. Errico* argued the cause for the petitioner-respondent.

The opinion of the court was delivered by
PROCTOR, J.   Respondent Meeker Foundry Company appealed from a judgment of the Essex County Court which

determined that petitioner is entitled to receive workmen's compensation for 100% loss of his left hand without any deduction for payments previously made to him by respondent for a prior injury to the same hand. The appeal was certified by this court on its own motion before argument in the Appellate Division.

The petitioner, Axel Nelson, has been employed as a maintenance man by the respondent for more than 25 years. On June 20, 1956 the petitioner sustained an accident in the course of his employment which resulted in the amputation of the fourth or little finger of his left hand. The compensability of this accident under the New Jersey Workmen's Compensation Act, *N. J. S. A.* 34:15–1 *et seq.*, is not disputed. Previously, in October 1931, while working for the same employer, petitioner sustained an injury which resulted in the loss of the thumb and the first and second fingers of his left hand. At that time, pursuant to the then applicable statutory provisions, petitioner received compensation of 65, 40 and 30 weeks, respectively, for the 100% loss of each of the three digits. Therefore, prior to the 1956 accident, which is the subject of the present litigation, petitioner was possessed of only the third and fourth fingers of his left hand. It is not disputed that as a result of the two accidents the petitioner has an impairment of his left hand equivalent to 100% loss of such member.

Petitioner's uncontradicted testimony before the Deputy Director of the Workmen's Compensation Division shows that his duties with the respondent to a considerable extent involved carpentry work. He is naturally right-handed, and before the 1931 accident he used his right hand for hammering and his left hand for guiding the nails. After the loss of the thumb and the first two fingers of his left hand he learned to reverse the process, gripping the hammer with his left hand and manipulating the nails with his right. He gradually mastered this technique and became "pretty good at it." Through the years petitioner gained considerable muscle strength and tone in both the left hand and arm,

and the efficiency of his work was not diminished. Following the second accident petitioner has substantially lost the usefulness of his left hand. He now picks up nails with his right hand, hammers them lightly with his left hand, just enough to penetrate the wood, and then switches the hammer to his right hand in order to drive the nails through. This method retards the efficiency of his work and he cannot accomplish the same amount in a day as he could prior to the accident. Further, his work involves transporting material in wheelbarrows, and he now can carry only comparatively light loads because of the lack of strength and control in his left hand.

Petitioner contended before the Deputy Director that as a result of the second accident, the loss of the fourth finger of his left hand, he sustained a 100% compensable loss of that hand. Respondent urged that petitioner's recovery was limited by statute to a 100% loss of the fourth finger. The Deputy Director awarded compensation for 100% loss of the entire left hand, or the equivalent of 230 weeks, but credited respondent with 125 weeks' compensation paid in 1931 for the injury suffered by petitioner in the first accident. Respondent appealed from the award and petitioner cross-appealed from that part of the judgment crediting the respondent with the 1931 payment. The County Court affirmed the Deputy Director's finding and held that "[a]s a result of the loss of his fourth finger the petitioner suffered a compensable loss of 100% of the left hand." However, the court reversed that part of the Division's judgment which credited the respondent with the amount previously paid by it to the petitioner.

On this appeal respondent urges that since the compensation for the loss of the fourth finger was specifically fixed by the statutory schedule of compensation payments in effect at the time of the second accident, petitioner's recovery should be limited to that amount. It relies upon *N. J. S. A.* 34:15-12(c)(h), subsequently amended *L.* 1956, *c.* 141 (*N. J. S. A.* 34:15-12(c)(5)), which section provided:

"Permanent partial disability. c. For disability partial in character, but permanent in quality, the compensation shall be based upon the extent of such disability. In cases included in the following schedule the compensation shall be that named in the schedule, to wit:

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

"Fourth Finger. h. For the loss of a fourth finger, commonly called little finger, sixty-six and two-thirds per cent of daily wages during twenty weeks."

Respondent asserts that petitioner's present disability is not the result of the loss of his fourth or little finger alone and that, "[i]n the absence of any injury to the hand or complaint of a different character of disability, psychoneurotic for example, &ast; &ast; &ast; the petitioner has sustained a purely scheduled loss of the fourth finger."

Petitioner contends that despite the loss of his thumb and first and second fingers prior to the June 1956 accident, he possessed the ability to use his left hand with some degree of efficiency and that therefore the consequences of his second injury are greater than the mere loss of a single finger. As he has never received compensation for the loss of a hand, petitioner asserts that his claim is cognizable under *N. J. S. A.* 34:15–12(*w*) (now substantially *N. J. S. A.* 34:15–12(*c*)(22), *L.* 1956, *c.* 141). At the time of the accident that section provided:

"In all lesser or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired, the compensation shall be sixty-six and two-thirds per centum (66 2/3%) of daily wages, and the duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule. In cases in which the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of five hundred and fifty weeks."

Subsequent to the petitioner's first accident the Workmen's Compensation Act was amended in 1945 to provide that a workman who lost a "thumb and the first and second fingers (on one hand) or four fingers (on one hand)" is

entitled to compensation equal to that for the loss of a hand or 230 weeks of compensation. *L.* 1945, *c.* 74, *p.* 381, § 5. *N. J. S. A.* 34:15–12(*o*). (Now substantially *N. J. S. A.* 34:15–12(*c*)(8).) Based on this amendment respondent argues that petitioner had already sustained the industrial loss of his left hand, and that as a result of the second accident the only additional loss he sustained was the fourth finger. It is significant, however, that petititoner has never been compensated for the loss of a hand but rather for the loss of three individual digits, as provided by the then effective statute. *N. J. S. A.* 34:15–12(*c*), (*d*), (*e*) and (*f*). The respondent's contention envisages a legislative intention to increase the amount of actual disability with retrospective effect. Such an interpretation would clearly be contrary to the spirit of the act. *N. J. S. A.* 34:15–12(*o*) should be deemed to be prospective, *i. e.,* applicable only to accidents occurring after its effective date. See *Freylinghuysen v. Morristown,* 77 *N. J. L.* 493 (*E. & A.* 1909).

Where an employee has successive accidents in which the second injury, when taken in concert with the prior one, has rendered the employee totally and permanently disabled, the Legislature has provided that he be compensated for the total effect of his injuries by the establishment of the one per cent fund. *N. J. S. A.* 34:15–94 *et seq.* In such a case the employee receives compensation for *total* permanent disability, although the employer at the time of the second injury is responsible only for the percentage of disability attributable to that injury, and any additional compensation to which the petitioner is entitled is provided by the statutory fund.

*Balash v. Harper,* 3 *N. J.* 437 (1950). Where, however, the total effect of two injuries leaves the employee, as here, with a *partial* permanent disability, no provision for such contribution is provided.

Prior to the establishment of the one per cent fund our courts took the position that the employer at the time of the second accident must bear the responsibility of the total

effect of the second accident on the employee. *Combination Rubber Mfg. Co. v. Obser,* 95 *N. J. L.* 43 (*Sup. Ct.* 1920), affirmed *per curiam sub nom. Combination Mfg. Co. v. Common Pleas,* 96 *N. J. L.* 544 (*E. & A.* 1921). The same result is generally arrived at in those jurisdictions in which no contributory legislation has been enacted. See 2 *Larsen, Workmen's Compensation Law,* § 59.10, *p.* 55 (1952). In the *Obser* case it was held that a one-eyed man who lost his remaining eye in an industrial accident is entitled to compensation, not for the loss of one eye, which loss was specifically provided for in the schedule of compensation, but for total permanent disability. The court proceeded on the theory that the Legislature, in providing specific compensation for the loss of an eye, leg or arm, contemplated a situation in which the other eye, leg or arm is available. The court said:

"It is claimed for prosecutor that what the employe lost by the accident was 'an eye,' and inasmuch as the act prescribes specific compensation for the loss of an eye, that clause should be applied. But this we conceive to be too literal an application of the letter of the statute, with results quite inconsistent with its spirit. * * * Such cases come within the general clause of subdivision (c) [of section 2] of paragraph 11, as amended in 1913, * * *." 95 *N. J. L.,* at *page* 44.

The statute referred to by the court is substantially the same as *N. J. S. A.* 34:15–12(w), relied on by the petitioner.

While the persuasiveness of decisions in other states is somewhat tempered by the distinctions in the various workmen's compensation statutes, an examination of the cases reveals that those courts, where possible under a liberal interpretation of their statutes, compute an injured employee's compensation on the basis of the total disability he has suffered irrespective that a percentage of such disability is traceable to a prior accident. *Tomes v. Gray & Dudley Co.,* 201 *Tenn.* 697, 301 *S. W. 2d* 389 (*Sup. Ct.* 1957); *Mark Mfg. Co. v. Industrial Commission,* 286 *Ill.* 620, 122 *N. E.* 84 (*Sup. Ct.* 1919); *Worden v. General Drop Forge Cor-*

*poration*, 285 *App. Div.* 910, 137 *N. Y. S. 2d* 671 (*App. Div.* 1955); *Paul v. Glidden Co.*, 184 *Md.* 114, 39 *A. 2d* 544 (*Ct. App.* 1944); *Wunsch v. Stanley Works*, 137 *Conn.* 228, 75 *A. 2d* 489 (*Sup. Ct. Err.* 1950); *Special Indemnity Fund v. Duff*, 200 *Okl.* 57, 191 *P. 2d* 584 (*Sup. Ct.* 1948) (specifically provided for by statute.); *Annotation, "Previous loss or mutilation of member as affecting amount or basis of compensation under Workmen's Compensation Act,"* 30 *A. L. R.* 979 (1924).

Respondent places reliance upon *Winn v. Adjustable Table Co.*, 193 *Mich.* 127, 159 *N. W.* 372, 163 *N. W.* 906 (*Sup. Ct.* 1916), and *Sorenson v. Grand Rapids Metalcraft Division of F. L. Jacob Co.*, 333 *Mich.* 709, 53 *N. W. 2d* 590 (*Sup. Ct.* 1952). While factually those cases are substantially the same as the present case, the result achieved in each can be attributed solely to the Michigan Workmen's Compensation Act. That statute contained no provision comparable to *N. J. S. A.* 34:15–12(w), and those courts determined they were without authority to render an award for the consequences of an injury which go beyond the specific member lost or injured, when such consequences are partially attributable to a prior accident. *Cf. Van Dorpel v. Haven-Busch Company*, 350 *Mich.* 135, 85 *N. W. 2d* 97 (*Sup. Ct.* 1957). In addition, under the Michigan statute compensation is paid to injured employees on the basis of diminution of earning power, whereas in New Jersey the test is "loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life." *Everhart v. Newark Cleaning & Dyeing Co.*, 119 *N. J. L.* 108 (*E. & A.* 1937); *Burbage v. Lee*, 87 *N. J. L.* 36 (*Sup. Ct.* 1915).

In the present case the uncontradicted testimony clearly establishes that prior to the second accident petitioner was able to use his left hand, although obviously impaired to some degree. Following that accident he has sustained a 100% disability of his hand within the statutory schedule then in effect. *N. J. S. A.* 34:15–12(o). It is settled in

this State that the percentage of permanent disability suffered is not decreased by the fact that the physical member affected was not functioning to 100% of its capacity at the time of the accident. *McCadden v. West End B. & L. Ass'n.*, 126 *N. J. L.* 1 (*Sup. Ct.* 1940), affirmed 127 *N. J. L.* 245 (*E. & A.* 1941); *Bernstein Furniture Co. v. Kelly*, 114 *N. J. L.* 500 (*Sup. Ct.* 1935) affirmed 115 *N. J. L.* 500 (*E. & A.* 1934); *Ducasse v. Walworth Manufacturing Co.*, 1 *N. J. Super.* 77 (*App. Div.* 1948).

The formula provided in *N. J. S. A.* 34:15-12(*w*) has been determined to govern an award where the functional disability incurred goes beyond the loss of use of a particular member. *Cooper v. Cities Service Oil Co.*, 137 *N. J. L.* 181 (*E. & A.* 1948); *Colarusso v. Bahto*, 128 *N. J. L.* 537 (*Sup. Ct.* 1942); *Sigley v. Marathon Razor Blade Co., Inc.*, 111 *N. J. L.* 25 (*E. & A.* 1933). See also *Rodriquez v. Michael A. Scatuorchio, Inc.*, 42 *N. J. Super.* 341 (*App. Div.* 1956). Although the above cases concerned combinations of injuries sustained in a single accident, the reasoning employed is equally applicable where the disability results from the compound consequences of two accidents. *Cf. Combination Rubber Mfg. Co. v. Obser, supra.* The loss of the fourth or little finger becomes a serious matter to the petitioner when taken in conjunction with the earlier loss of his thumb, first and second fingers, since its loss has now substantially deprived him of the use of his hand. The total effect of the two accidents resulting in the loss petitioner sustained to his hand entitles him to compensation under *N. J. S. A.* 34:15-12(*w*), as measured by *N. J. S. A.* 34:15-12(*o*), which provides 230 weeks' compensation where there is 100% disability of a hand.

The remaining question is whether the respondent is entitled to a deduction for payments previously made to petitioner for the first accident. In reversing the Deputy Director's determination allowing the deduction the County Court held that the present case was indistinguishable in principle from *Heidel v. Wallace & Tiernan*, 37 *N. J. Super.*

522 (*Cty. Ct.* 1955), affirmed *per curiam,* 21 *N. J.* 335 (1956), and that under that case no deduction should have been allowed. In the *Heidel* case the petitioner sustained the loss of four fingers and was accordingly compensated for the 100% loss of his right hand. Subsequently, as a result of a second accident petitioner's right arm was amputated just below the elbow and he was granted a second award for the 100% loss of the hand. In that case such an award was clearly justified. For the purpose of prescribing the number of weeks of compensation the applicable statutory provision, *N. J. S. A.* 34:15–12(*vv*) (now *N. J. S. A.* 34:15–12(*c*)(*2*), specified, "amputation between the elbow and wrist shall be considered as the *equivalent* of the loss of a hand." (Emphasis added) Heidel's second accident resulted in a further distinct loss (thumb, palm, wrist and part of forearm) actually greater than the prior loss of the four fingers which had been declared by the statute to be equivalent to the loss of a hand for compensation purposes. This further loss fell specifically within the above provision. That situation is clearly distinguishable from the present case where it is the combination of the two accidents which produced petitioner's disability. In the absence of the first injury the second could not have resulted in the disability to the entire hand. While petitioner has never been compensated for the loss of his hand, respondent has paid compensation to him for the loss of his thumb and two fingers. The situation with respect to this claim is unique. Compensation for the 1931 injury was measured in terms of loss of digits. If that loss had been incurred subsequent to 1945 it would have constituted total loss of the hand because of the amendment to the act which declared it to be so. But, as we have determined above, the change did not benefit Nelson, nor could it be applied to him retroactively so as to have the effect of increasing the disability—which had been measured in terms of digits—to total loss of the hand. Thus, when he suffered the 1956 accident which under the existing statute brought his hand disability to total, justice

required that he be compensated on that basis. And by the same token it would not be just to charge the employer, who had already paid compensation for the earlier digital loss, with total loss of the hand. Under the circumstances it seems proper to fix the award of compensation on the basis of total loss of the hand expressed in weeks of compensation less the number of weeks of compensation paid for the 1931 loss of digits. *Cf. N. J. S. A.* 34:15–12(*d*), effective January 1, 1957. The Deputy Director correctly determined that respondent is entitled to deduct from the 230 weeks due to petitioner for the loss of his hand the number of weeks of compensation previously paid to the petitioner. After argument in this court it was brought to our attention that respondent has previously paid petitioner 135 weeks compensation and not 125 weeks as determined by the commissioner. Respondent will be credited with the larger number of weeks.

The judgment of the County Court is reversed and the decision of the Compensation Division is reinstated as modified above.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.