64 N.J. Super. 489 (1960)
166 A.2d 576
HERMAN WEXLER, PETITIONER-RESPONDENT,
v.
LAMBRECHT FOODS, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1960.
Decided December 12, 1960.
*492 Before Judges GOLDMANN, CONFORD and KILKENNY.
Mr. John W. O'Brien argued the cause for appellant (Messrs. O'Brien, Brett & O'Brien, attorneys).
Mr. Ronald G. Targan argued the cause for respondent.
*493 The opinion of the court was delivered by KILKENNY, J.A.D.
This is an appeal by the respondent, Lambrecht Foods Company, from a judgment of the Hudson County Court finding that the petitioner Herman Wexler was disabled to the extent of 100% total and permanent disability, as the result of a heart attack suffered by him on August 27, 1957, while in the employ of the respondent, and holding the entire amount assessable against respondent. Respondent does not contest the determination of 100% total permanent disability, but objects to the adjudication of liability for the total against itself.
The Division of Workmen's Compensation had also found that the petitioner was totally and permanently disabled, but concluded that there was reasonably and properly attributable to the compensable accident of August 27, 1957 permanent disability of only 15% of total. It found that there were pre-existing disabilities "definite and measurable in nature and extent," which in combination with the later accident created a condition of total and permanent disability. Although no award was made against the One Per Cent Fund, the finding laid the basis for such a claim to be made subsequently by the petitioner.
The hearing in the Division was in Newark and the determination was made on January 6, 1959. The petitioner made timely appeal therefrom on February 5, 1959 to the Essex County Court, which later transferred the matter, on its own motion, by order of October 1, 1959 to the Hudson County Court, because the accident occurred in Hudson County.
Among other points, the respondent argues on this appeal, as it did in the Hudson County Court, that the Hudson County Court did not have jurisdiction to hear the appeal. We concur in the opinion of the Hudson County Court that it did have jurisdiction. Petitioner suffered his compensable heart attack in Jersey City, Hudson County, while performing his duties as an employee of respondent. In an appeal from the determination of the Division of *494 Workmen's Compensation, N.J.S.A. 34:15-66 provides, inter alia that "Either party may appeal * * * to the County Court of the county in which the accident occurred * * * by filing with the secretary of the division, and with the clerk of such county, a notice of appeal * * * within 45 days." (Emphasis supplied)
In Hart v. Kimball, 122 N.J.L. 217 (Sup. Ct. 1939), it was held that pursuant to the Removal of Causes Act, R.S. 2:26-60, the court had the power to transfer a workmen's compensation appeal to the proper county, where the appeal was inadvertently taken from the Workmen's Compensation Bureau to a court of a county other than that in which the accident occurred. The court said, at p. 219:
"The obvious purpose of the statute providing for the removal of causes was to prevent the loss of a hearing by a litigant who took his case to a court which could not deal with the subject matter."
R.S. 2:26-20 has been repealed along with other statutes dealing with procedure in the courts. In its place R.R. 1:27D now covers transfer of causes with like effect. In re Old Colony Coal Company, 49 N.J. Super. 117, 124 (App. Div. 1958); and Valonis v. Mayor & Tp. Committee of Cinnaminson, 54 N.J. Super. 567, 569 (App. Div. 1959). Hence, the transfer from the Essex County Court was properly made to the Hudson County Court, and it was correct to proceed as if the appeal had originally been taken to the latter court.
No contention is made on this appeal that the petitioner did not suffer a compensable accident, when he suffered his heart attack on August 27, 1957. No argument is made that, as a consequence of that compensable accident, he is not now totally and permanently disabled. As noted above, the contest is rather centered on the extent of the respondent's obligation to pay that total disability. The respondent argues that it is liable for only 15% of the total disability, as found by the deputy director, and that the *495 remainder is referable to the One Per Cent Fund under N.J.S.A. 34:15-95. The petitioner urges that the respondent must properly pay 100% of his total disability, as determined by the County Court.
We observe a procedural difficulty in making any binding determination as to the applicability of the instant situation to the provisions of the One Per Cent Fund law. This case is not a proceeding against the Fund and the Fund is not represented herein by counsel charged with presenting evidence or argument against this responsibility. N.J.S.A. 34:15-95.1 provides in part:
"Applications for benefits under this act shall be made by a verified petition filed in duplicate within two years after the last payment of compensation by the employer * * *. The decision, however, as to whether the petitioner shall or shall not be admitted to the benefits shall be rendered by the said Commissioner of Labor. * * *."
Thus, the employee's right to apply for the benefits of the One Per Cent Fund law within that extended period makes it unnecessary to determine his right thereto when his compensation case is heard.
However, it was held in Walker v. Albright, 119 N.J.L. 285 (Sup. Ct. 1938), that the Commissioner of Labor is not a necessary formal party to the original workmen's compensation proceeding, for purposes of making a determination of total disability in such proceeding res adjudicata as to that fact in a subsequent proceeding by the workman against the Fund. It was there stated that he is "ex officio" a party in every proceeding, acting through his referees and deputies. The deputy director's findings here inferentially hold the Fund answerable, without expressly stating so. This is implicit in his determination that petitioner is totally disabled, but the employer is liable for only 15% thereof.
Yet in actual practice, as here, the applicability of the One Per Cent Fund law is generally not expressly presented to or passed upon by the deputy director or by the County *496 Court in the workmen's compensation hearing. See Administrative Directive No. 9 of the Division of Workmen's Compensation which provides:
"Applications for benefits for the Second Injury Fund shall not be filed earlier than 6 months prior to the date when the final payment of compensation is payable by the employer for the subsequent permanent injury which, in combination with the previous partial permanent disabilities, is asserted as having resulted in total disability."
A proceeding against the Fund is thus contemplated to follow the compensation proceeding against the employer. See also Voessler v. Palm Fetchteler & Co., 120 N.J.L. 553 (Sup. Ct. 1938), affirmed opinion below 122 N.J.L. 434 (E. & A. 1939). It would seem essential that in a case such as this, where the argument addressed to the deputy director by the respondent was for a ruling calculated to induce a proceeding against the Fund by the workman, the Attorney General should be brought into the case at the outset. It is clear that, in substance, whether or not in form, the employer was attempting to lay a foundation for liability of the Fund for part of petitioner's total disability.
However, as we have concluded that the respondent is liable for petitioner's total liability in this case, we shall proceed to determine the matter, notwithstanding the absence of the Attorney General. Accordingly, we note the following facts.
Petitioner, 56 years of age, was employed by respondent as a door-to-door food salesman. His work day began about 6 A.M., when he would obtain the food items to be sold from the stock clerk and personally load them on the truck, before leaving on his daily route. This initial chore took about one hour and fifteen minutes. He would then go to his particular area, fill a basket with 20 to 25 pounds of food items, and solicit sales from door to door. He would then return to the truck, move on a bit, and repeat the process of reloading the basket and carrying it from door to door. He did this work five days a week, approximately *497 11 hours a day, for about two years prior to suffering his heart attack on August 27, 1957. He did not miss one day's work in all this time.
On that hot summer day, with the temperature at 87° , while carrying a basket of respondent's food items, weighing approximately 60 pounds, up to the third floor of a walk-up apartment in Jersey City, the petitioner suffered a coronary infarction. Petitioner's desire to avoid extra trips back to his car for refilling the basket had induced this heavier than usual weight in the basket. Petitioner then experienced a dull pain across his chest; pain radiated down into the upper part of his arms, and he broke out into a "cold sweat."
He was under the treatment of Dr. Carrol until November 1958, when he moved to Florida on the recommendation of his physician. He attempted to do some work in respondent's office for four days in October 1957, but was unable to do the work. Petitioner has not worked since then. He has become permanently and totally disabled as a physiological and industrial unit, which prevents him from engaging in any gainful occupation.
According to Dr. Carrol's report of February 12, 1958, admitted in evidence without objection, petitioner's medical history shows that he had a moderately severe coronary thrombosis, with evidence of infarction in the anterior wall of the heart, on July 1, 1947. Recovery was good and the petitioner returned to full work. In 1953 petitioner had a mild diabetes. In 1955 he suffered a transitory small stroke, at which time numbness and weakness of the right foot and right arm were noted, but disappeared in a few hours. This history also indicated that the patient had generalized arteriosclerosis.
Dr. Carrol examined petitioner within a matter of hours after the heart attack of August 27, 1957. His tests over a period of days furnished the doctor "proof that he [petitioner] had suffered a second thrombosis in an arteriosclerotic coronary artery." (Emphasis supplied) The clinical picture *498 was that of "a rather small infarction." Petitioner was not hospitalized and was allowed to become ambulatory after some two weeks, although he was not permitted to return to work. Dr. Carrol reviewed his record and gave him "a rather guarded prognosis."
The respondent introduced into evidence a medical certificate by Dr. Carrol, dated September 14, 1957, in which the doctor described the nature and cause of petitioner's disability as "arteriosclerotic heart disease, coronary insufficiency."
Dr. Lieb, a heart specialist, testifying for petitioner, stated as his opinion that petitioner suffered an acute myocardial infarction while at work on August 27, 1957; that this infarction was causally related to his work on that date; that he is not employable; and is disabled 100% of total. He also expressed his opinion that the acute myocardial infarction which petitioner suffered on August 27, 1957 was a competent producing cause of this total disability; and that this infarction, when superimposed upon his pre-existing conditions, rendered him disabled to the extent of 100% of total. While not able to separate the amount of injury caused by the first heart attack, or the percentage of disability to be ascribed to the 1947 attack as differentiated from the second in 1957, Dr. Lieb testified that the actual over-all heart disability was 50% of total; and the remaining 50% of disability he ascribed to the generalized arteriosclerosis, which included cerebral sclerosis and the presence of diabetes. He also stated: "the fact that this man did have this coronary attack in 1947, that he was a working unit for ten years up until the time he got his second coronary, I would ascribe about twenty-five to thirty per cent of total for the second attack."
Dr. Grunt, a specialist in internal medicine with special reference to the effects of trauma, but not a specialist in cardiology, testifying for respondent, estimated petitioner's disability on his cardiac condition at 20% of total. He agreed that petitioner's over-all disability as it affects his *499 heart would "approach one hundred per cent." He ascribed 30% to the diabetes and kidney involvement, 25% to the cerebral arteriosclerotic disease, and 5% or 10% for osteoarthritis. He testified that there is a very close relationship between diabetes and arteriovascular disease generally. As he stated: "I am sure there is a relationship between this coronary affair, the cerebral affair, and the diabetes, which is underlying the whole thing. It is pretty hard to differentiate it completely. I am trying to give a figure. That, apparently, is an individual matter that is merely arbitrary these figures I give." (Emphasis supplied)
Thus, the medical proofs justify the findings of the County Court and deputy director that the effects of the coronary infarction sustained by petitioner on August 27, 1957, when superimposed upon petitioner's pre-existing physical conditions, specifically noted above, resulted in petitioner's present 100% total and permanent disability as a physiological and industrial unit, and his inability to engage in any gainful occupation. Yet, for two years prior to the incident of August 27, 1957, petitioner performed his fairly arduous duties for his employer, five days a week over long hours, without missing a day from work. Despite his 1947 heart attack, from which he had a "good recovery and returned to full work," and the 1955 small stroke and the related diabetes, petitioner's physical condition did not in any way impair his ability to do his daily job.
The following language in Davenport v. Alvord Hotel, 21 N.J. Super. 493, 496 (Cty. Ct. 1951) is applicable here:
"* * * the conclusion is inescapable that the compensable employment incident acting upon underlying conditions utterly destroyed her working capacity. It turned a competent working unit  one who did her work as well as any other employee of respondent  into a total and permanent invalid. There is no sound support in the evidence for the view that its effects can be or should be segregated from the other bodily or neuro-psychiatric impairments.
Under the circumstances petitioner's total disability is chargeable to her employment mishap * * *."
*500 Walsh v. Kotler, 43 N.J. Super. 139 (Cty. Ct. 1956), affirmed 46 N.J. Super. 206, 212 (App. Div. 1957), states the well accepted rule that an employer takes his employees with their physical defects or disabilities, and where a pre-existing disease is caused to become active or flare up and injury results therefrom, the same is compensable, and it is not necessary that the accident should be shown to be the sole contributing cause of the resulting disability of the employee. In the Walsh case the court expressly rejected the holding in the Compensation Division that only 20% of the condition of total disability should be charged to the employer based on the concept that 80% represented a condition of predisposition to the employment-precipitated disability. It is not essential, under our Workmen's Compensation Act, that an employee be in perfect condition prior to the compensable accident in order to recover from the employer for the entire resulting disability. Marshall v. C.F. Mueller Co., 135 N.J.L. 75, 78 (Sup. Ct. 1946); and Bernstein Furniture Co. v. Kelly, 114 N.J.L. 500 (Sup. Ct. 1935), affirmed 115 N.J.L. 500 (E. & A. 1935). This last noted decision held that "an accidental strain of a heart, even though the heart was previously weakened by disease, may be a compensable injury under our statute." Numerous later cases have held to the same effect.
This remedial social legislation is designed to place the costs of accidental injuries, which are work-connected, upon employers who may readily provide for them as operating expenses. "The act nowhere either in terms or purpose, embodies the common law concept of proximate causation; on the contrary it is enough if the employment is a contributory cause." Secor v. Penn Service Garage, 19 N.J. 315, 319 (1955).
Where an employer contends that he is not legally responsible for petitioner's total disability and seeks to attribute the disability of the injured employee to causes for which he is not responsible, the burden of proof in that regard is on the employer. Marshall v. C.F. Mueller Co., *501 supra, 135 N.J.L., at p. 78; Spindler v. Universal Chain Corp., 11 N.J. 34 (1952).
The pre-existing infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with a disease or infirmity to produce the disability for which compensation is sought. In brief, the employer is said to take the employee as he finds him. 1 Larson's Workmen's Compensation Law, §§ 12, 20, p. 170 et seq.
Respondent does not show a proper case for shifting a part of its liability to the One Per Cent Fund. The intended use of the Fund and the test of its applicability are clearly set forth in Balash v. Harper, 3 N.J. 437 (1950). In that case our Supreme Court stated (at p. 442) that the One Per Cent Fund statute was intended "to insure the employee full compensation where a compensable disability succeeds but has no causative connection with the results of a prior disability, the combination of the two leaving the employee permanently and totally disabled. The intention is to relieve the employer of the undue burden of a prior disability, with which or its results, the disability arising in his employ has no causative connection." As the court also stated therein:
"The test of the applicability of the `One Per Cent Fund' is (a) that an employee has become totally and permanently disabled when a compensable disability is superimposed upon a prior disability, whether compensable or not, and (b) that the prior disability is one for whose results the subsequent disability has not been a competent producing cause as by aggravation, activation or acceleration. If the last compensable accident produces an aggravation, activation or acceleration then any progression in the pre-existing condition is attributable and is part of the last compensable accident."
In the Balash case, where the proofs showed that the workman sustained compensable disability from coronary occlusion, that such disability was superimposed on prior disability *502 from non-compensable inguinal hernia (3 N.J., at p. 441), and that the two disabilities resulted in total and permanent disability, and there was no proof that the coronary occlusion aggravated the inguinal hernia, it was held that the workman was entitled to compensation under that section of the Compensation Act dealing with the One Per Cent Fund. While there was discussion in that case of a prior condition of arteriosclerosis as well as of hernia, the arteriosclerosis played no part in the holding of the court that the One Per Cent Fund was implicated.
In Davenport v. Alvord Hotel, supra, which is quite similar to this case, the respondent also conceded that the petitioner sustained a compensable accident and became totally and permanently disabled. The Division of Workmen's Compensation awarded her compensation for total permanent disability. On appeal to the County Court, respondent claimed that not more than 17 1/2% of the total disability should have been assessed against it, and that the remaining 82 1/2% should be charged to the One Per Cent Fund, N.J.S.A. 34:15-94 et seq. The basis for the respondent's contention was that the undisputed proof showed that prior to petitioner's accident she was suffering from certain physical abnormalities, namely hypertension, some loss of hearing, a squint of one eye for which she wore glasses, and a congenital curvature of the spine. Respondent asserted that the petitioner's total disability had resulted from laying a separate and distinct disability produced by the accident alongside the pre-existing infirmities. However, the court held that where the employee, who suffered disabilities to which she had adjusted and which had not prevented satisfactory performance of her work, suffered a mishap which, together with existing disabilities, resulted in total disability, the employer was chargeable with the total disability, and the One Per Cent Fund with none.
As noted by Judge (now Justice) Francis in the Davenport case, the statute creating the One Per Cent Fund, as it is commonly called, provides among other things, that
*503 "* * * no person shall be eligible to receive payments from such fund:

* * * * * * * *
(b) If permanent disability results from the aggravation, activation or acceleration, by the last compensable injury, of a pre-existing noncompensable disease or condition." (N.J.S.A. 34:15-95)
This excerpt was not part of the act as originally enacted. It followed certain judicial interpretations thereof and clearly manifested an intention to remove from access to the Fund those cases where the total disability arose from "aggravation, activation or acceleration of a pre-existing noncompensable disease or condition" by a compensable injury.
In Vandenberg v. John De Kuyper & Son, 5 N.J. Super. 440 (App. Div. 1949), upon a finding that insanity and resulting total disability were caused by an accident in the course of employment, this court held that pre-existing psychoneurosis aggravated by accident did not preclude an award of full compensation for total permanent disability payable by the employer alone without recourse to the One Per Cent Fund.
The original statute establishing this fund, L. 1923, c. 81, p. 162, directed that where an employee was totally disabled as a result of two separate compensable accidents, he should be paid out of the Fund the difference between total disability and compensation for the two partial disabilities taken separately. By amendment, L. 1936, c. 55, p. 145, the scope of the act was broadened to include cases where the first disability did not result from a compensable accident, and it directed payment from the Fund for that part of the compensation for which the employer was not liable. The statute was carefully considered in Richardson v. Essex, etc., Co., 119 N.J.L. 47 (E. & A. 1937), a case in which a one-legged employee received an injury to his remaining leg that, considered alone, would have resulted in 22% disability, but since he had only one leg, it produced a total disability. There the court adjudged that his employer pay compensation for the 22% partial disability only and *504 that the Fund was liable for the remaining 78%. The court discerned a legislative intent to induce employers to cooperate in the hiring of persons previously disabled by eliminating the employer's liability for an accident unrelated to the employment of the injured person.
A further amendment appears in L. 1940, c. 133, p. 288, this time excluding from the benefit of the Fund cases like the Vandenberg case, in which "permanent total disability results from the aggravation, activation or acceleration, by the last compensable injury, of a pre-existing noncompensable disease or condition." (Emphasis supplied) The statute in its present form appears as N.J.S.A. 34:15-95.
Under the present state of the law, when an accident arising out of and in the course of employment produces a total and permanent disability, our law allows compensation in the same amount and for the same period, whether it was the accident alone that caused the disability or whether it was the accident in conjunction with a pre-existing condition. If the One Per Cent Fund is liable for part of the compensation, the employer is relieved to that extent; otherwise the employer must pay all the compensation to which the employee is entitled. Where, as in the instant case, an employee was a competent working unit, without any obvious physical incapacity, and the accident acting upon underlying and causally related physical conditions turned him into a person incapable of pursuing any gainful occupation, the employee's total disability is chargeable to the employment mishap and none of it is chargeable to the One Per Cent Fund.
Respondent argues that there is no testimony in the case showing that the 1957 infarction aggravated, activated or accelerated petitioner's pre-existing condition, and that paragraph (c) of N.J.S.A. 34:15-95 is therefore not effective to take the case out of the coverage of the One Per Cent Fund. To this there are several answers.
True, there is no testimony expressly to the effect stated, but this may be because no legal representative of *505 the Fund was present to address questions designed to elicit the information from any of the witnesses. Had there been, there might well have been testimony to the effect that the previously weakened arteries and the heart constitute part of a single cardiovascular system and that the strain of the work episode on August 27, 1957, while manifested dramatically only by the coronary occlusion, aggravated and accelerated the pathology of the cardiovascular system as a whole. But whether this is so or not, the determinative factor is that the One Per Cent Fund was never applicable where there was a causal connection between the earlier condition and the later accident, whether the earlier contributed to the later or vice versa. This is implicit in the reasoning in such cases as Balash v. Harper and Walsh v. Kotler, both supra. See also In re Glennon, 18 N.J. Misc. 196, 197 (C.P. 1940). Although we need express no considered opinion on the point, it is persuasively arguable that paragraph (a) of the cited section covers the case of a prior condition contributing to the later condition or accident, and applies here, since the compensable disability here was precipitated by the 1957 occlusion and does constitute total and permanent disability within the meaning of the act. Paragraph (a) reads as follows:
"(a) If the disability resulting from the injury caused by his last compensable accident in itself and irrespective of any previous condition or disability constitutes total and permanent disability within the meaning of this Title."
In other words, reading paragraph (a) in pari materia with the remainder of the act and interpretive cases, it may be concluded that if the later accident is a competent producing cause of the entire resulting disability, and the earlier condition is causally contributive to the later condition or accident or accelerated or aggravated thereby, the employer bears the full liability and the Fund is exempt.
That the generalized arteriosclerotic condition was causally related to the 1957 coronary accident of this petitioner *506 is self-evident as a matter of common medical knowledge which has been attested in many of our cases. See Ciuba v. Irvington Varnish and Insulator Co., 27 N.J. 127, 137 (1958); Kream v. Public Service Coordinated Transport, 24 N.J. 432, 435 (1957); Pitkethly v. City of Paterson, 12 N.J. 564, 568 (1953); Lohndorf v. Peper Bros. Paint Co., 134 N.J.L. 156, 159 (Sup. Ct. 1946), affirmed 135 N.J.L. 352 (E. & A. 1947); Joseph Dixon Crucible Co. v. Law, 135 N.J.L. 528, 529 (Sup. Ct. 1947). Had a specific question in that regard been addressed to either of the medical witnesses here the same hypothesis would undoubtedly have been elicited. It is implicit in the testimony of Dr. Grunt, quoted above. Nor was Dr. Lieb purporting to express a contrary opinion when he allocated 50% of the over-all total disability to the heart and the remainder to the sclerotic condition and related diabetes. He was simply apportioning the components of the resulting disability by degree of contribution, not giving an opinion on the matter of their causal relationship to each other.
We consequently conclude that full responsibility for the total disability falls upon the respondent employer, as the County Court properly found. We note that no question was raised as to the quantum of benefits to which the employee became entitled by reason of his permanent total disability, as determined by the County Court.
Accordingly, the judgment of the Hudson County Court is in all respects affirmed.