88 N.J. Super. 9 (1965)
210 A.2d 430
STANLEY J. BELTH, PETITIONER-APPELLANT,
v.
ANTHONY FERRANTE & SON, INC., RESPONDENT-RESPONDENT.
STANLEY J. BELTH, PETITIONER-APPELLANT,
v.
SOMERSET CRUSHED STONE, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 1, 1965.
Decided May 24, 1965.
*10 Before Judges CONFORD, KILKENNY and LEWIS.
*11 Mr. John W. O'Brien argued the cause for appellant (Messrs. O'Brien, Brett & O'Brien, attorneys).
Mr. Isidor Kalisch argued the cause for respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
The question presented here is whether an employer is excused from liability in workmen's compensation for that portion of the permanent partial disability of the knee and leg of an employee following a work-connected accident which can be shown to be attributable to a noncompensable previous accident to that leg. Our decision is in the negative. The pertinent facts in the case are as follows.
In 1954 petitioner, while riding a motorcycle, collided with an automobile, resulting in a permanent injury to his left leg. This accident did not arise out of any employment. The medical evidence indicates that he suffered from a comminuted compound fracture of the left tibia and fibula which required three surgical operations. The residual effects were deformity, shortening of the leg and an almost complete loss of motion of the knee joint.
In 1956 petitioner, although physically handicapped, was employed as a welder and truck driver by respondent Anthony Ferrante & Son, Inc. and/or Somerset Crushed Stone, Inc. (herein Ferrante). His work was steady and without incident until October 22, 1958, when he suffered a compensable injury which occurred when he fell from a "muddy ladder" onto the running board of his employer's truck. The mishap forced a piece of metal to pierce the mid-section of his left foreleg. He received no medical attention on that occasion.
A few days later, on October 25, 1958, while at work for the same employer, petitioner again slipped and fell from the identical ladder upon a piece of steel, and injured the same area of his left leg causing it to swell, blister and fester. He immediately contacted his doctor and was referred by him to an orthopedic specialist who, in turn, had him admitted to the Muhlenberg Hospital on October 27, 1958. The diagnosis was *12 osteomyelitis of the left tibia. A "saucerization" operation was performed, during which the bone was found to be full of "dirty necrotic granulation tissue & pus." The entire area of the wound was curetted, leaving a saucer-like indentation in the bone. That operation left the tibia "1/2 its normal thickness" and "a hole" in the leg that was not there before. The treating physician prescribed a brace which petitioner is required to wear at all times. He returned to work on April 1, 1959, but was "laid off."
Subsequently, petitioner found employment with the Middlesex Gardening Center where he worked about six months, and thereafter he obtained a job with Thul Machine Works. On November 10, 1960, while employed by the latter company, he sustained his fourth injury to the left lower extremity when a piece of steel material fell across his left ankle producing "severe pain and swelling of the [left] leg." He was treated at the Overlook Hospital, where an operative procedure was necessitated. The medical diagnosis was (1) sequelae of chronic osteomyelitis of the left tibia and fibula, and (2) residuals of contusion of a previously infected leg, with a flare-up of activity.
A separate claim petition was filed with the Workmen's Compensation Division for each of the last three accidental episodes. With consent of counsel, they were consolidated for purposes of trial inasmuch as the respective injuries involved the same anatomical area and the same insurance carrier appeared and defended for all of the named employers.
On the basis of the proofs the judge of compensation found that after all of the accidents and operations mentioned above, petitioner had a permanent partial disability of the left leg to the extent of 85%. Of this amount he held 10% was attributable to the 1960 Thul accident, and an award of compensation to that extent was entered against the Thul company. Compensation for the remaining 75% of disability was entered in favor of petitioner against Ferrante, the judge rejecting Ferrante's contention that it should not be held liable for that part of the disability attributable to the original *13 motorcycle accident in 1954. The judge found it unnecessary to determine the quantum of disability allocable to the original accident.
The Union County Court agreed with the 85% over-all disability figure and the 10% award against Thul, but disagreed with the award of 75% against Ferrante, finding that prior to the Ferrante injuries petitioner's leg had been 65% disabled as the result of the noncompensable injury, and holding that consequently the award against Ferrante should be reduced to 10%.
Petitioner appeals from the judgment of modification entered by the County Court, contending that its apportionment of liability was improper as a matter of law.
The concordant findings of the judge of compensation and County Court, that petitioner's disability of the leg was 85% partial permanent and that 10% thereof should be allocated to Thul, are not challenged. The single issue raised by petitioner's appeal for our consideration is whether the 75% part of the award is subject to apportionment for Ferrante's benefit between the compensable accidents in 1958 during employment with it and the 1954 non-work-connected injury. If Ferrante prevails, petitioner goes without compensation for so much of his disability as may be apportionable to the 1954 accident.
Broadly speaking, the judge of compensation predicated his conclusion upon the firmly established legal principle "that the employer takes an employee as he finds him." The county judge reached the opposite result after finding that petitioner's disability was attributable mainly to the 1954 accident. He approved the doctrine just quoted but added, "this relates to his [petitioner's] susceptibility to injury or disease and the aggravation, acceleration or activation thereof," citing Bober v. Independent Plating Corp., 28 N.J. 160 (1958). We hold this to be an unwarranted construction of that decision and the applicable statutory law. A brief resume of the background of the pertinent law may be helpful.
*14 Within two years after the adoption of our Workmen's Compensation Act (L. 1911, c. 95) it was construed to be based upon the proposition "that the inherent risks of an employment should, in justice, be placed upon the shoulders of the employer, who can protect himself by an addition to the price of his products, and so cause the burden ultimately to fall upon the consumer * * *." Deeny v. Wright & Cobb Lighterage Co., 36 N.J.L.J. 121, 123 (C.P. 1913). That underlying philosophy has been frequently restated in subsequent judicial pronouncements.
In Combination Rubber Mfg. Co. v. Obser, 95 N.J.L. 43 (Sup. Ct. 1920), affirmed per curiam sub nom. Combination Mfg. Co. v. Common Pleas, 96 N.J.L. 544 (E. & A. 1921), an employee, who had already lost one eye at the time of entering on a new employment, sustained a work-connected accident which caused the loss of his remaining eye and thereby rendered him totally blind. In holding that an award for total and permanent disability was justified, the court considered the Workmen's Compensation Act (as amended by L. 1913, c. 174) to be remedial legislation that should be liberally construed, and then rationalized:
"The petitioner had eyesight when he entered on his employment; that eyesight was a physical function; it was destroyed utterly. True, the word `impair,' taken literally, does not cover total destruction of a function; but here, again, the spirit should not be killed by the letter." (95 N.J.L., at pp. 44-45)
See also Granowitz v. Hay Foundry and Iron Works, 9 N.J. Misc. 1165, 157 A. 130 (Sup. Ct. 1931), affirmed o.b. 109 N.J.L. 394 (E. & A. 1932).
The doctrine of full responsibility as enunciated in the 1920 opinion in Combination Rubber Mfg. Co. v. Obser, supra, was approvingly reiterated by our Supreme Court in Nelson v. Meeker Foundry Co., 30 N.J. 139, 144-145 (1959), with the added emphasis, "It is settled in this State that the percentage of permanent disability suffered is not decreased by the fact that the physical member affected was not functioning *15 to 100% of its capacity at the time of the accident." (at pp. 146-147)
The Supreme Court in that case also referred with obvious approval to decisions in other states where "liberal interpretation" of compensation statutes "compute an injured employee's compensation on the basis of the total disability he has suffered irrespective that a percentage of such disability is traceable to a prior accident." Id., at p. 145.
In the Nelson case itself, applying the stated principle, an employee was held entitled to an award of 100% loss of a hand although he had lost only the fourth finger while employed by the respondent, but had previously lost three fingers in another accident, causing the current loss to disable his hand completely. The authority of the decision in relation to the present case is not affected by the circumstance that by virtue of the provisions of N.J.S.A. 34:15-12(d) the employer in Nelson was held entitled to a credit on the judgment for the compensation which had been previously awarded the employee for the original accident.
The rule that the employer takes the employee as he finds him most often finds application in cases where a later employment-connected accidental injury or occupational disease is accelerated, activated, worsened or contributed to by a previous disease, as distinguished from a physical disability of an orthopedic nature. See Bober v. Independent Plating Corp., supra, 28 N.J., at p. 163; Wexler v. Lambrecht Foods, 64 N.J. Super. 489 (App. Div. 1960), certification denied 34 N.J. 326 (1961). But this does not mean, as the County Court concluded, that the total liability of the employer in the type of situation here presented is confined to where the original condition was merely a susceptibility to later injury or disease as distinguished from a definite physical disability. Cf. Granowitz v. Hay Foundry and Iron Works, supra.
It was, indeed, the general understanding that an employer hiring a physically handicapped person becomes liable to him in compensation for his full disability after an accident, notwithstanding that disability was greater than if he were not *16 previously partially disabled, which led New Jersey and other states to legislation for the so-called "Second Injury" or "One Per Cent" Funds which, in varying circumstances, assess against a state-created fund part of the compensation award resulting from injuries to such a person. The object was to discourage the refusal to hire the handicapped. See Berkowitz, Workmen's Compensation: The New Jersey Experience, c. 9, pp. 226 et seq. (1960); N.J.S.A. 34:15-94, 95, 96.
We have no occasion here to discuss the New Jersey One Per Cent Fund Act in detail. Nor are we concerned with the cases ruling on what kinds of prior disability are compensable by the Fund rather than the employer in whose service the later accident occurred. Even if recourse to the Fund were sought here, which it is not, the statute would not be invocable for two principal reasons: (a) the Fund is liable only where the ultimate disability is permanent and total; (b) resort to the Fund is unavailable where there is causal relation by way of aggravation, activation or acceleration between the two injuries or disabilities in question. See Balash v. Harper, 3 N.J. 437, 442 (1950); Wexler v. Lambrecht Foods, supra, 64 N.J. Super., at pp. 501-506. In the instant case the ultimate disability was partial, not total; further, from the medical proofs, there was evidently causal connection between the effects of the later and earlier accidents. Since the original injury was not employment-connected, and there was consequently no prior compensation award therefor, Ferrante obviously cannot have the benefit of the credit provided by N.J.S.A. 34:15-12(d).
Finally, we should point out that we are not concerned on the present appeal with the question of apportionment of liability between two or more employers joined as respondents in a compensation case for a disability incurred during employment with more than one employer. As noted above, the apportionment of liability as between Thul and Ferrante is not an issue here. Compare Silberman v. National Egg & Product Co., 131 N.J.L. 286 (Sup. Ct. 1944), affirmed o.b. 132 N.J.L. 143 (E. & A. 1944), with Bucuk v. Edward A. *17 Zusi Brass Foundry, 49 N.J. Super. 187, and cases cited therein, at pp. 202-207 (App. Div. 1958), certification denied 27 N.J. 398 (1958).
The County Court regarded the rule of liability imposed here by the Division of Compensation as antisocial in nature because it would tend to discourage the hiring of handicapped employees. But we regard this problem as one for the Legislature which even now has under consideration modification of the One Per Cent Fund Act. See Senate Bill No. 98 (1965); also see the Report of the Joint Legislative Workmen's Compensation Study Commission, April 1, 1963, pp. 9-10.
It results that the judgment of the County Court is reversed, and the judgment of the Division of Workmen's Compensation is reinstated.