184 N.J. Super. 274 (1982)
445 A.2d 1170
LARRY GOTHELF, PLAINTIFF-RESPONDENT,
v.
OAK POINT DAIRIES OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1982.
Decided April 15, 1982.
*276 Before Judges BISCHOFF, KING and POLOW.
Stephen L. Hopkins argued the cause for appellant (Philip M. Lustbader and David Lustbader, attorneys; Stephen L. Hopkins on the brief).
Alan S. Goldberger argued the cause for respondent (Balk, Goldberger, Mandell, Seligsohn & O'Connor, attorneys; Alan S. Goldberger of counsel and on the brief).
The opinion of the court was delivered by POLOW, J.A.D.
The employer, Oak Point Dairies of New Jersey, challenges the method of computation employed by the Division of Workers' Compensation in awarding petitioner benefits for 40% permanent partial disability. The fact that a compensable accident occurred whereby petitioner sustained injuries to that extent is not contested, nor does the employer challenge petitioner's entitlement to disability for 240 weeks. The controversy concerns interpretation of the recently amended schedule of benefits in N.J.S.A. 34:15-12 (L. 1979, c. 283, § 5). Based upon his reading of the amended statutory schedules, the compensation judge concluded "that petitioner is entitled to 240 weeks at $98.40 per week which would total $23,616." According to Oak Point Dairies, as it interprets the legislative intent, petitioner's recovery would be limited to lesser but progressively increasing weekly benefits of $49 a week for the initial 96 weeks, growing in graduated steps to $98.40 a week as of the 211th week. Thus, the employer concludes that proper application of the statutory formula would result in a total award to petitioner of $15,849, almost $8,000 less than the sum fixed by the compensation court.
*277 The desire of the Legislature to increase benefits for more serious injuries while eliminating or reducing payments for those of a minor nature is clearly evidenced by the Joint Legislative Statement accompanying the amendment to N.J.S.A. 34:15-12:
This bill is a revision of New Jersey Workers' Compensation Law and would make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to the employment.
The bill would put significantly more money into the hands of the more seriously injured workers while providing genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that are presently among the highest in the nation.
Among other things not relevant to this controversy, disability benefits were increased from 66 2/3% to 70% of weekly wages at the time of injury and the maximum benefits were increased from 66 2/3% to 75% of the statewide average weekly wages (SAWW) earned by all employees covered by the law. The minimum benefits were increased from $15 a week to 20% of the average weekly wages. The number of weeks for which compensation may be awarded for temporary disability was increased from 300 to 400. Similarly, the amended statute provides for increases in awards for total permanent disability within minimum and maximum limitations as provided therein.
The disability wage and compensation schedule contained in N.J.S.A. 34:15-12(c) provides for a sliding scale of maximum allowable weekly benefits through the first 180 weeks of disability. For example, it provides maximum allowable compensation of $47 a week for the first 90 weeks. If the award exceeds 90 weeks but is no greater than 96 weeks, the new schedule provides for maximum allowable compensation of $49 a week. Thereafter, the schedule provides for an increased maximum of two to three dollars a week for each six-week period of compensation up to 180 weeks. The method of computation in cases in which compensation is allowable for up to 180 weeks is clearly demonstrated and not disputed. For example, the following section leaves little doubt as to the legislative intent applicable for compensation payable up to but for no more than 180 weeks:

*278
 Weeks of Allowable Maximum Weekly Compensation
 Compensation Applicable 
 175-180 weeks ....................... $49 for the first 96 weeks
 then $51 for the next 6 weeks
 then $54 for the next 6 weeks
 then $56 for the next 6 weeks
 then $59 for the next 6 weeks
 then $61 for the next 6 weeks
 then $63 for the next 6 weeks
 then $66 for the next 6 weeks
 then $68 for the next 6 weeks
 then $70 for the next 6 weeks
 then $73 for the next 6 weeks
 then $75 for the next 6 weeks
 then $77 for the next 6 weeks
 then $80 for the next 6 weeks
 then $82 for each remaining week

The conflict in the views of the parties is related to the very next portion of the schedule:

 181-210 weeks ............. 35% of the Statewide average
 weekly wages, hereinafter
 referred to as "SAWW"
 211-240 weeks ............ 40% of SAWW
 241-270 weeks ............ 45% of SAWW
 271-300 weeks ............ 50% of SAWW
 301-330 weeks ............ 55% of SAWW
 331-360 weeks ............ 60% of SAWW
 361-390 weeks ............ 65% of SAWW
 391-420 weeks ............ 70% of SAWW
 421-600 weeks ............ 75% of SAWW

*279 Since the compensation judge determined that petitioner is entitled to 240 weeks of compensation and the SAWW is conceded to have been $246 for the period in question, petitioner was awarded 240 weeks of compensation at 40% of SAWW, or $23,616. Appellant disagrees and insists that the statute requires the sliding scale indicated in the schedule applicable to weeks 1 to 180 as quoted above be applied to the first 180 weeks; that the benefits for weeks between 181 through 210 are to be computed at 35% of SAWW, and only the final 30 weeks, those between 211 and 240 inclusive, may be compensated at the 40% maximum. As expressed by appellant: "We contend that the plain meaning of the statute only permits the 40% rate to be applied to the last 211-240 weeks."
Both sides readily agree that statutory language must be given its ordinary and well understood meaning, Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 182 (1980), and that a statute should be construed as written rather than according to some unexpressed intention. Dacunzo v. Edgye, 19 N.J. 443, 451 (1955). To resolve ambiguities, courts may resort to principles of statutory construction as well as intrinsic and extrinsic aids, including legislative history. Levin, supra, 82 N.J. at 182; In re Meadowlands Communications Systems, Inc., 175 N.J. Super. 53, 65 (App.Div. 1980), certif. den. 85 N.J. 455 (1980).
Although the statutory provision in question is not entirely free of ambiguity, our analysis of its provisions together with the legislative history and the Joint Statement satisfies us that the interpretation applied by the judge of compensation complies with the statutory scheme and is consistent with the expressed intent of the Legislature. We note first the manner in which each group of weeks is expressed up to that for 175-180 weeks. In each grouping to that point the Legislature has clearly expressed its intention to apply a sliding scale. Beyond this point, the sliding scale is eliminated from the schedule and a single percentage rate appears. There can be little doubt that the Legislature intended that the statute be interpretated in the language in which it is expressed. For 181 *280 to 210 weeks, 35% of SAWW is intended as the maximum allowable compensation for the entire compensable period of time. For 211 to 240 weeks the percentage is raised to 40% for every compensable week. The inclusion of a sliding scale within the various groupings up to 180 weeks and its deliberate exclusion thereafter provides evidence of a legislative intent to permit the maximum allowable benefits up to the indicated percentage of SAWW for every compensable week for injuries serious enough to warrant a compensation award in excess of 180 weeks.
We agree with the view expressed by the judge of compensation
... that petitioner is entitled to 240 weeks at $98.40 per week, which would total $23,616, and that $98.40 per week is, as we construe it to be, to start from week number one right through week number 240.
I take note of two things: Initially, that it appears to be self-evident that the 1980 amendment to the Workers' Compensation Act was intended to substantially upgrade petitioner's monetary recovery and to do so in relation to the severity of the injury.
Secondly, and perhaps more importantly relative to the construction of the Act, it is noted that awards of permanent partial disability which entitle the petitioner to a scale of recovery in weeks of up to and including 180 weeks are specifically spelled out on, as you point out, a progressively arithmetic scale. Thus, while all awards totaling 90 weeks or less are to be paid at $47 per week, there is a stated, spelled out, and printed table of payments at increasing rates for awards in excess of 90 weeks.
Moreover, the table of payments for each succeeding five weeks of payments beyond 90 weeks sets these payments out meticulously and repetitively, leaving absolutely no doubt as to these payments up through 180 weeks. After 180 weeks we no longer see any reference to or repetition of $47 for the first 90 weeks, nor the carefully structured scaled payments thereafter. We see only a brand new and simply stated formula  35 per cent of the Statewide Average Weekly Wage for awards from 181 through the 210 week range and with increasingly larger percentages of the Statewide Average Weekly Wage for higher awards.
To me, this absence of the structured payments  or perhaps pyramided may be a better word  is indicative of the intent of the legislature to recognize more severe injuries on a different basis  if not geometric rather than arithmetic, then at least to have payments from week number one start at a much higher rate than those for less severe injuries.
As for awards entitling the petitioner to an award of more than 450 weeks, which would result in a judgment exceeding that for total disability, the *281 apparent anomaly is readily explained in that in a total disability award, payments under Section 12(b) would continue indefinitely after the 450 week period on continued eligibility for total disability, whereas in the partial permanent disability exceeding 450 weeks, it would terminate at the conclusion of the stated period.
The Joint Statement of the Legislature, explaining how the new schedule would place significantly more money "into the hands of the more seriously injured workers," states that maximum awards to workers for work-related amputations would change by providing increased total awards as follows:

 Arm - $12,000 to $55,340
 Leg - $11,000 to $52,825
 Hand - $ 9,200 to $33,440
 Foot - $ 8,000 to $28,100

The Legislature thus provided specific examples of the maximum benefits to be awarded under the new schedules for certain identified serious injuries. The compensation judge's interpretation of the statute would provide benefits approximately equal to the demonstrative examples cited by the Legislature itself. Appellant's interpretation would provide maximum benefits of less than $34,000 for an arm amputation, $21,000 short of the sum proclaimed by the Joint Statement as the maximum benefit intended for such an injury.
For each example contained in the Joint Statement, undoubtedly evidencing the legislative intent, the interpretation applied in the Division of Compensation would approximate the intended result. The formula urged by appellant would severely frustrate that intent by reducing available maximum benefits by more than one-third. It is our responsibility to effectuate the intent of the Legislature rather than to permit an overly literal interpretation to thwart its underlying purpose. Red Bank Ed. Ass'n v. Red Bank High Bd. of Ed., 151 N.J. Super. 435, 438 (App.Div. 1977), aff'd 78 N.J. 122 (1978). We continue to be mindful that the Workers' Compensation Act as remedial social legislation is to be "given liberal construction in order that its *282 beneficent purposes may be accomplished." Torres v. Trenton Times Newspaper, 64 N.J. 458, 461 (1974).
Affirmed.