WILLIAM T. HEATON, JR., PETITIONER-RESPONDENT, v.
JERSEY CENTRAL POWER & LIGHT CO.,
RESPONDENT-APPELLANT.

Argued March 19, 1984—Decided July 16, 1984.

*Alfred A. Arnold* argued the cause for appellant (*Galvin & Arnold,* attorneys).

*Frederick C. Mezey* argued the cause for respondent (*Mezey & Mezey,* attorneys).

PER CURIAM.

We granted certification, 95 *N.J.* 204 (1983), to decide how to compute a workers' compensation award for over 180 weeks. Petitioner received an award for 100% loss of his right eye (200 weeks), and 3% partial permanent disability (18 weeks). There is no dispute as to the extent of the injury, only the computation of the award. The employer argues that the award for 200 weeks should be divided, so that the first 180 weeks are compensated in accordance with the sliding scale of *N.J.S.A.* 34:15-12(c), and the last 20 weeks at the statutory rate of 35% of statewide average weekly wage (SAWW). The employee contends that all 200 weeks should be compensated at 35% of SAWW. The compensation court agreed with the employee. The Appellate Division affirmed for the reasons stated in *Gothelf v. Oak Point Dairies of N.J.,* 184 *N.J.Super.* 274 (App.Div. 1982). We affirm.

The Disability Wage and Compensation Schedule of *N.J.S.A.* 34:15-12(c) in effect at the time of this accident provided, in part:

| Weeks of Allowable Compensation | Maximum Weekly Compensation Applicable |
|---|---|
| 175–180 weeks ......... | $49 for the first 96 weeks |
| | then $51 for the next 6 weeks |
| | then $54 for the next 6 weeks |
| | then $56 for the next 6 weeks |
| | then $59 for the next 6 weeks |
| | then $61 for the next 6 weeks |
| | then $63 for the next 6 weeks |
| | then $66 for the next 6 weeks |
| | then $68 for the next 6 weeks |
| | then $70 for the next 6 weeks |
| | then $73 for the next 6 weeks |
| | then $75 for the next 6 weeks |
| | then $77 for the next 6 weeks |
| | then $80 for the next 6 weeks |
| | then $82 for each remaining week |
| 181–210 weeks ......... | 35% of the Statewide average weekly wages, hereinafter referred to as "SAWW" |
| 211–240 weeks ......... | 40% of SAWW |
| 241–270 weeks ......... | 45% of SAWW |
| 271–300 weeks ......... | 50% of SAWW |

However, another part of 12(c) states that after January 1, 1982, the specific dollar amounts in the statute were replaced by percentages of SAWW. After that substitution, the statute reads:

| Weeks of Allowable Compensation | Maximum Weekly Compensation Applicable |
|---|---|
| 175–180 weeks ......... | 21% of SAWW for the first 96 weeks |
| | then 22% of SAWW for the next 6 weeks |
| | then 23% of SAWW for the next 6 weeks |
| | then 24% of SAWW for the next 6 weeks |
| | then 25% of SAWW for the next 6 weeks |
| | then 26% of SAWW for the next 6 weeks |
| | then 27% of SAWW for the next 6 weeks |
| | then 28% of SAWW for the next 6 weeks |
| | then 29% of SAWW for the next 6 weeks |
| | then 30% of SAWW for the next 6 weeks |
| | then 31% of SAWW for the next 6 weeks |
| | then 32% of SAWW for the next 6 weeks |
| | then 33% of SAWW for the next 6 weeks |
| | then 34% of SAWW for the next 6 weeks |

then 35% of SAWW for each remaining week
[weeks 175–180]
181–210 weeks ......... 35% of SAWW

    If, as the employer here contends, the Legislature had intended to make the rate of 35% of SAWW applicable only to the later weeks of a 200-week award instead of to the whole period, it would have moved the break point back to week 175 when the award is 35% of SAWW "for each remaining week." The only reasonable interpretation of this statute as written is that after week 180 the injured worker is entitled to 35% of SAWW for the whole period, not just for those weeks after the sliding scale stops.

The employer's interpretation contradicts not only the internal sense of the statute, but also the legislative understanding of how the awards are to be computed. In the Joint Statement to S.802, at 1 (1979), *quoted in Poswiatowski v. Standard Chlorine Chem. Co.*, 96 *N.J.* 321, 329 (1984), the Legislature explained the significant changes it was making in workers' compensation awards. It illustrated its intent by giving examples of the new awards for work-related amputations and contrasted them to the old ones. Yet if we calculate the amputation awards as the employer would have us do here, the awards would be dramatically less than the Legislature intended:

|  | Under the old statute | According to Joint Statement | According to employer's formula |
|---|---|---|---|
| Arm | $12,000 | $55,340 | $33,941 |
| Leg | $11,000 | $52,825 | $31,431 |
| Hand | $ 9,200 | $33,440 | $20,936 |
| Foot | $ 8,000 | $28,000 | $19,035 |

We agree with the *Gothelf* court:

For each example contained in the Joint Statement, undoubtedly evidencing the legislative intent, the interpretation applied in the Division of Compensation

would approximate the intended result. The formula urged by appellant would severely frustrate that intent by reducing available maximum benefits by more than one-third. It is our responsibility to effectuate the intent of the Legislature rather than to permit an overly literal interpretation to thwart its underlying purpose. [184 *N.J.Super.* at 281.]

At oral argument, both parties recognized that the then-pending decision in *Poswiatowski, supra,* might require recomputation of the award on the stacking issue. On remand, the compensation court may recompute the award in light of *Poswiatowski.*

The judgment below is otherwise affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, O'HERN and GARIBALDI—6.

*For reversal*—None.