LOUIS KATONA, PETITIONER-RESPONDENT, v. FEDERAL SHIPBUILDING AND DRY DOCK COMPANY, DEFENDANT-PROSECUTOR.

Argued October 8, 1947—Decided January 20, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Stryker, Tams & Horner* (*William L. Dill, Jr.,* of counsel).

For the respondent, *Isaac W. Seiler* (*Aaron Gordon,* of counsel).

The opinion of the court was delivered by

HEHER, J. This case arises under the Workmen's Compensation Act. *R. S.* 34:15–7, *et seq.*

It is conceded that the employee suffered a compensable injury on January 12th, 1945, as the result of the explosion of "high compression" steam into his left ear on the breaking of a six-inch steam pipe while in the pursuit of his employment in the hold of a ship at defendant's shipyard in Kearny. The issue is as to the *quantum* of the consequent disability. The Bureau found that the claimant had sustained a loss of hearing in his left ear to the extent of 50% of total, but no impairment of the hearing in his right ear, and awarded compensation accordingly. There were cross-appeals to the Hudson Common Pleas. Judge Ziegener was convinced that there was a total and permanent loss of the hearing in the left ear, and a 40% permanent loss of hearing in the right ear, and granted compensation on the basis of a hearing loss of 70% of total. *Certiorari* was granted at the instance of the employer.

The question is largely one of fact. The deputy commissioner expressed the view that the claimant "is considerably exaggerating his amount of disability;" and the argument of the employer is that the finding of the Pleas of a total and permanent loss of hearing in the left ear and a permanent hearing loss of 40% in the right ear is contrary to the clear weight of the evidence, and that the judgment of the Bureau is well founded and should be sustained. It is said the evidence of such injury comes solely from subjective medical tests, and that the claimant's "action and conduct" subsequent

to the accident were not in keeping with that hypothesis. It is pointed out that the claimant made no mention of impairment of the hearing in the right ear until some fifteen months after the accident, when he was first examined by the physician who gave expert opinion evidence in his behalf. But it is fairly clear that he was not aware of this particular disability prior to its discovery by the physician. The failure of one to recognize a hearing deficiency is not unusual. The claimant is untutored; and it is not unreasonable to suppose that he attributed his partial deafness to the quite obvious injury to his left ear, which took the full force of the steam explosion. It is admitted that the direct consequence of this was a permanent loss of hearing in the left ear, but it is insisted that the impairment is not more than 50%. The employer's medical witness said he could not be more specific because the employee, in the course of a subjective audiometric measurement commonly used by ear specialists, was "uncooperative in his responses" as to the left ear, or, in other words, he feigned total deafness in the left ear. This general conclusion was the result of a test made by means of a "noise apparatus" which "eliminated function in the right ear." It revealed, so the witness said, only that the claimant responded to questions and "was not totally deaf" in the left ear, but did not permit of a measurement of the hearing loss. The witness "could not be any more definite than that." Yet, this is only one of the tests of the subject's integrity. As to the right ear, the witness found "a slight loss of the upper tones;" but he made no estimate of the hearing loss, nor could he do so from the record of his examinations, two in number. He could not fix the percentage of hearing loss in either ear, he said, because of the claimant's deliberate noncooperation. But the witness' testimony discloses no basis whatever for the suggestion of noncooperation in the test of the right ear; and there is no discernible reason why the claimant would limit his noncooperation to the examination of the left ear. It raises doubt as to the accuracy of the test. Or, perhaps, the witness' recollection was at fault. At all events, it is not of countervailing quality, when considered in relation to all the evidence.

We are not convinced that there was malingering. Both the injury and a substantial degree of deafness are conceded. And, as we have seen, it is fairly inferable from the testimony of the employer's specialist, despite the intimation *contra,* that the claimant did not practice deception as to the condition of his right ear. And, if this was so, why should he feign total deafness in the left ear? It is not without significance in this regard that the employer did not adduce evidence from two ear specialists who, at its instance, examined and treated the employee for some time after the accident. We think the evidence preponderates in favor of the hypothesis of total deafness in the left ear. And it would seem that trauma of sufficient force to destroy hearing in the left ear would in all human likelihood materially affect the hearing of the right ear. This is the view of the claimant's specialist, based upon modern medical experience with sailors who served on battleships during the late war. The hearing loss of the ear directly exposed to the explosive noise caused by heavy gun fire was found to be usually greater than the loss in the other ear. While the witness' examination was necessarily largely subjective in character, he found a satisfying corroborative circumstance in the fact that the hearing in the right ear "was very much the same" on three separate occasions. The hearing loss in the right ear was "greater for high tones;" but "there is a small loss for the low tones, as well." The subjective finding of a total loss of hearing in the left ear was reinforced by "standard measuring tests" which revealed no "signs of malingering." He was quite convinced there was no imposition. The left ear drum, he said, was scarred, indicating "previous perforation." The employer's specialist said neither drum was scarred. Both agreed that there was "nerve deafness" of the left ear.

In the final analysis, the inquiry is whether, after an examination and comparison of all the evidence, the minds of the triers of the facts are convinced of the existence of the claimed injury and the requisite causal relationship. And the conviction need not have the quality of certainty. It suffices if there be a belief grounded in reasonable probability of truth according to the common experience of mankind—such as

guide men of prudence and discretion in the ordinary affairs of life. *Gilbert* v. *Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533. The evidence here satisfies that standard of proof. It brings the proposition affirmed by the claimant within the bounds of rational inference.

It is also urged that the finding of a hearing loss of 70% of total is without evidential support, in that neither of the medical witnesses "testified to any percentage of total loss of hearing," and it is "well recognized" that when an eye or an ear "ceases to function the other like organ compensates considerably for the useless organ and renders a much greater amount of service than it does when it functions in conjunction with another good like organ."

Under *R. S.* 34:15–12(u) and (w), compensation is payable for the impairment of the physiologic unit of hearing; and on the evidence adduced 70% of total fairly expresses the *quantum* of loss of function. The duration of the compensation bears that relation to the specific period of time fixed in the schedule for the loss of hearing in both ears. One who suffers total deafness in one ear and a 40% loss in the other obviously suffers a loss of seven-tenths of his hearing, considered as a unit. We cannot assume, in the absence of proof, that deafness in the left ear will render the hearing in the right ear more acute. This is not a matter of general knowledge of which we may take judicial notice. Moreover, it is to be presumed, on the evidence adduced, that the present hearing loss in the right ear will not be reduced. There is no suggestion *contra* in the proofs. If there should be a decrease of disability, the statute affords a remedy.

The judgment of the Court of Common Pleas is affirmed, with costs.