191 N.J. Super. 371 (1983)
466 A.2d 1315
LLOYD TUCKER, PETITIONER-RESPONDENT,
v.
CENTRAL PAPER CO., RESPONDENT-APPELLANT. STEVE POSWIATOWSKI, PETITIONER-APPELLANT,
v.
STANDARD CHLORINE CHEMICAL CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1983.
Decided July 25, 1983.
*372 Before Judges ARD, KING and McELROY.
*373 Robert G. Bressler argued the cause and on brief for appellant Central Paper Co.
Stephen J. Zielinski argued the cause for respondent Tucker.
Louis David Balk argued the cause for appellant Poswiatowski (Balk & Balk, attorneys).
Robert G. Bressler argued the cause for respondent Standard Chlorine Chemical Co. (Stephen M. Lazzari on the brief).
The opinion of the court was delivered by McELROY, J.A.D.
These workers' compensation cases were consolidated by our order and were presented and argued on the same date. They involve accidents occurring after January 10, 1980, the effective date of the 1979 amendments to the Workers' Compensation Act (the act). L. 1979, c. 283. Neither case raises any issue of the petitioner's right to compensation. Both involve disabilities to more than one member or part of the petitioner's body caused by a single accident. The cases pose the question of how such disabilities are to be treated in making a compensation award under N.J.S.A. 34:15-12 c which, in pertinent part, provides:
... When a claim petition alleges more than one disability, the number of weeks in the award shall be determined and entered separately for each such disability and the number of weeks for each disability shall not be cumulative when entering an award.
In Tucker's case, which concerned injuries and disabilities to his lower back, right leg, right arm and right hand and an anxiety neurosis, the judge of compensation held that Tucker's several disabilities were to be "considered as one entity and expressed in terms of partial permanent disability since several major members have been affected." He awarded compensation for "permanent partial disability based upon 33 and 1/3 percent." The judge noted, however, that he apportioned Tucker's disability of 33 1/3% of partial permanent as follows: "5% permanent partial disability ... psychiatric ... due to an anxiety reaction; 3% permanent partial disability ... orthopedic *374 ... based upon a lumbosacral sprain; ... 5% loss of the statutory right leg, orthopedic ... due to a mild chondromalacia; ... a 4% loss of a statutory right arm ... orthopedic ... due to a medial epicondylitis," and as the "most serious aspect of his disability ... the injury to his right statutory hand which approximates 20% permanent partial disability or 50% loss of that [member]."
Despite this specific determination of separate disabilities the judge stacked them all together, considered all "as one entity" and gave Tucker a single award expressed in terms of partial permanent disability at 33 1/3%. The judge held that this entitled Tucker to 200 weeks at $86. a week or $17,200 under the "Disability Wage and Compensation Schedule" of N.J.S.A. 34:15-12 c.
When appellant's counsel objected to this method of computation the judge acknowledged his awareness of the amendment to N.J.S.A. 34:15-12 c but was of the opinion it did not relate "to matters of this kind." The judge observed that liberal construction of the act required the result he attained and made reference to "the concept ... that when an accident produces injury to more than one major member that ... disability is then expressed in terms of permanent partial disability." Tucker's employer appeals.
Poswiatowski's accident caused injuries to his back, a fracture of his left foot and a psychiatric condition. His case was decided by another judge who viewed the quoted section of the statute as plain in intent and held "the three disabilities ... should be entered separately in compliance with the aforementioned statute." Thus, he separately awarded Poswiatowski 40% of the foot (40% of 230 weeks, or 92 weeks, N.J.S.A. 34:15-12 c 10); 20% of partial permanent for the back injury (20% of 600 weeks, or 120 weeks, N.J.S.A. 34:15-12 c 22), and 10% of partial permanent "for the neuropsychiatric component" (10% of 600 weeks, or 60 weeks, N.J.S.A. 34:15-12 c 22). He calculated the *375 awards amounted to $13,172, and ordered them to be paid at an averaged weekly rate of $81.30.
Poswiatowski appeals. He principally presents the following argument:
By awarding separate payments to the claimant for each portion of his disability and thereby requiring each number of weeks to be paid at the $47.00 rate, the Judge of Compensation has deprived the claimant of approximately Twenty Thousand ($20,000.00) Dollars, since the rate called for by the Statute (N.J. 34:15-12, supra) for 272 weeks would be fifty (50%) per cent of the statewide average weekly wages (SAWW) or 272 weeks times $123.33 (fifty (50%) percent of $246.67), for a total of Thirty Three Thousand Five Hundred Forty Five Dollars and Seventy Six Cents ($33,545.76).
Poswiatowski thus argues that his three disabilities, i.e., 40% of the left foot, 92 weeks; 20% partial permanent for his back, 120 weeks, and 10% of partial permanent for injury to his psyche, 60 weeks, total 272 weeks and that under the "Disability Wage and Compensation Schedule" of N.J.S.A. 34:15-12 c he falls within the bracket of 271-300 weeks. He asserts that the clear admonition of subsection c that "the number of weeks ... for each ... disability shall not be cumulative when entering an award" should be interpreted as "more probably germane to those cases where many different types of claims are combined ... as in a case when claims of occupational natures are filed with allegations of pulmonary, otological, ophthalmological disabilities and the like."
The different methodologies employed by the two judges are of considerable monetary significance under the new "Disability Wage and Compensation Schedule" of the amended act. N.J.S.A. 34:15-12 c. If the weeks due for separately determined disabilities are treated as cumulative when entering an award more dollars are awarded. This result would occur because by the 1979 amendments, L. 1979, c. 283, § 5, the Legislature not only increased the weekly rate for permanent disability from a maximum of $40 weekly to a maximum of 75% of statewide average weekly wage (SAWW), but also instituted a sliding scale of weekly dollar payments ranging from $47 weekly, where the adjudicated disability required payment for 90 weeks or less, *376 up to $82 weekly for the last six weeks of a disability for which 180 weeks of entitlement is required. After 180 weeks of entitlement, however, there is a dramatic increase in weekly dollars payable. From 181 up to 600 weeks, disability is compensated from a low of 35% of SAWW for disabilities drawing entitlement from a range of 181-210 weeks, to a maximum of 75% of SAWW for disabilities falling within the 421 to 600 weeks bracket.[1]See Gothelf v. Oak Point Dairies of N.J., 184 N.J. Super. 274 (App.Div. 1982).[2]
The relevant statutory language here being considered reads:
... When a claim petition alleges more than one disability, the number of weeks in the award shall be determined and entered separately for each such disability and the number of weeks for each disability shall not be cumulative when entering an award. [N.J.S.A. 34:15-12 c; emphasis supplied.]
In both of these cases the claim petitions asserted orthopedic, neurological and neuropsychiatric injuries. The WC4-1 petition form employed by the Division requires a listing of "every injury" rather than "every disability." In each case, however, separate and distinct disabilities were demonstrated by the evidence. We do not regard the language emphasized by us in the above quotation as a legislative attempt to merely limit the amendment's application to bare allegations. The judge in Poswiatowski's case held, and we agree, that "even if the claim petition were not clear in what it alleged, as very often is the *377 case, the court believes it more realistic to go by the final results or findings in the matter as distinct from allegations."
We pass on to the main task which is to determine the intent of the Legislature in requiring that "the number of weeks in the award shall be determined and entered separately for each such disability and the number of weeks for each disability shall not be cumulative when entering an award." Our search of the legislative history and of the results of committee hearings reveals no clue as to its origin. We have not discovered a recent decision interpretive of this wording. Its addition to the statute requires not only interpretation of the legislative intent in adding this new language but a consideration of its effect upon other portions of N.J.S.A. 34:15-12 c, particularly par. 22, which was not, in any way directly pertinent to our inquiry, changed by the 1979 amendments. The applicable rule of statutory construction is expressed by Sutherland:
In accordance with the general rule of construction that a statute should be read as a whole, as to future transactions the provisions introduced by the amendatory act should be read together with the provisions of the original section that were reenacted in the amendatory act or left unchanged thereby, as if they had been originally enacted as one section. Effect is to be given to each part, and they are to be interpreted so that they do not conflict. If the new provisions and the reenacted or unchanged portions of the original section cannot be harmonized, the new provisions should prevail as the latest declaration of the legislative will. In the absence of express evidence to the contrary, the new provisions are applicable only to the unchanged portions of the original section, and have the same scope. [1A Sutherland, Statutory Construction (4 ed. Sands 1972), § 22.34; footnotes omitted].
N.J.S.A. 34:15-12 is the operative section of the Workers' Compensation Act by which compensation is fixed and payable for specific disabilities. Thus, subsection a prescribes the amount and period of payment for temporary disability, subsection b the amount and period of payment for total disability and subsection c the amount of payment and weeks of entitlement for partial permanent disabilities. A major part of the latter subsection consists of over four pages dealing with the sliding scale of dollars payable under the "Disability Wage and Compensation Schedule" already mentioned. This is followed by *378 numbered paragraphs (numbers 1 through 21) scheduling specific injuries and weeks of compensation allocable to loss of body members ranging from total or partial loss of fingers and toes to complete loss of a hand, an arm, a foot, a leg, visual loss, eye enucleation, loss of teeth and hearing loss. Paragraph 20 provides that total permanent disability shall be awarded for the loss of both hands, both arms, both feet, both legs, both eyes "or any two thereof as the result of any one accident."
Of significance to a consideration of the question of legislative intent as to the new phrase requiring a separate determination and the entry of the number of weeks of each disability in entering an award is paragraph 22 which covers cases of a "lesser or other" nature involving permanent loss, i.e., "less" than and "other" than the scheduled injuries. Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108 (E. & A. 1937). In pertinent part it provides:
In all lesser or other cases involving permanent loss, or where the usefulness of a member of any physical function is permanently impaired, the duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule. In cases in which the disability is determined as a percentage of total and permanent disability, the duration of the compensation shall be a corresponding portion of 600 weeks. [at 111]
This paragraph has been interpreted as providing the means of compensation not only for nonscheduled specific injuries, e.g., to the back, head, brain, internal organs, scarring, functional neurosis and psychic disabilities, but also for partial permanent disabilities to more than one or a combination of the scheduled body members listed in the paragraphs that precede this paragraph, and for which specific weeks of compensation are not statutorily prescribed. In such cases the quantum of disability is rendered in terms of partial permanent disability. See, e.g., Nelson v. Meeker Foundry Co., 30 N.J. 139, 147 (1959); Cooper v. Cities Service Oil Co., 137 N.J.L. 181, 182-183 (E. & A. 1948); Sigley v. Marathon Razor Blade Co., Inc., 111 N.J.L. 25, 30 (E. & A. 1933); Orlando v. Ferguson & Son, 90 N.J.L. 553 (E. & A. 1917); Katona v. Federal Shipbuilding Co., 136 N.J.L. 474, 478 *379 (Sup.Ct. 1948); Colarusso v. Bahto, 128 N.J.L. 537, 532 (Sup.Ct. 1942); Vishney v. Empire Steel & Iron Co., 87 N.J.L. 481 (Sup.Ct. 1915). See also Rodriguez v. Michael A. Scatuorchio, Inc., 42 N.J. Super. 341 (App.Div. 1956), certif. den. 23 N.J. 140 (1957).
Cooper v. Cities Service Oil Co., supra will serve as an illustration. Cooper was injured in closing a garage door. Rust scales entered both eyes; he lost seven teeth and developed a neurosis. The loss of vision in his right eye was 100% and visual loss to his left eye was 10%. The resulting neurosis was separately assessed as 5% of partial permanent disability and his loss of seven teeth was separately assessed at the scheduled statutory allowance of 28 weeks of disability. The Bureau of Compensation and the Court of Common Pleas agreed that Cooper was entitled to a combined award of 55% of partial permanent for his combined visual loss plus an additional award of 5% of partial permanent for his neurosis for a total of 60% or 300 weeks of compensation under the statute as it then existed. They additionally allowed the scheduled 28 weeks for the loss of teeth. When the matter came before the Court of Errors and Appeals this method of computation was affirmed. The court held:
Compensation for the loss of one eye and two eyes is specifically covered in R.S. 34:15-12(s) and (v). Injuries for lesser or other cases are compensable pursuant to R.S. 34:15-12(w), which at the time of this accident provided:
"In all lesser or other cases involving permanent loss * * * the duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the Schedule. In cases in which the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of five hundred weeks."

When there is a partial permanent disability to two members of the body included in paragraph (v), such as eyes, it is error to calculate each disability separately under paragraph (s) and to add the percentages; compensation must be determined pursuant to paragraph (w) as a percentage of total disability. Vishney v. Empire Steel and Iron Co., 87 N.J.L. 481. If three members of the body designated in paragraph (v) are injured, the partial disability of the three members must be computed "upon the basis of the percentage of total and permanent disability reasonably found to be produced by the several injuries considered collectively and with due regard to their cumulative effect." Orlando v. Ferguson & Son, 90 [N.J.L.] Id. 553, 558.

*380 In the instant case so much of the award allowed for the loss of seven teeth was correctly determined in accordance with R.S. 34:15-12(t). Separate and distinct classes of partial incapacity, though resulting from the same accident, are individually compensable. Sigley v. Marathon Razor Blade Co., Inc., 111 N.J.L. 25. We must determine pursuant to the provisions of R.S. 34:15-12(w) compensation for the loss of the employee's right eye, partial permanent disability of the left eye, and a neurosis resulting from both.

The Bureau found the percentage of total and permanent disability to both eyes amounted to 55 per cent, which apparently represents the mean of the individual disability to both eyes. This method of computation is wholly in accord with the purpose of the Workmen's Compensation Act in general and with paragraph (w) in particular, which is to reduce compensable disability to mathematical computations, and will be accepted as the percentage of total and permanent disability in the absence of proof to the contrary. Vishney v. Empire Steel and Iron Co., supra; Katona v. Federal Shipbuilding, & c., Co., 136 [N.J.L.] Id. 474.

Orlando v. Ferguson & Son, supra, does not hold otherwise; there the error consisted in the computation of compensation under paragraph (s) when all the injuries were within the provisions of paragraph (w). In Colarusso v. Bahto, 128 N.J.L. 537, an award was allowed for 47 1/2 per cent for the total loss of one eye, partial permanent disability of the other, and a 12 1/2 per cent neurosis. The method of computation, however, was not indicated.

Here the additional allowance of five per cent of total for neurosis was proper. The disability is distinct and separate and therefore compensable under the statute. Sigley v. Marathon Razor Blade Co., Inc., supra. [137 N.J.L. at 182-183; emphasis supplied]
It may be seen from an analysis of Cooper that where a single accident caused disabilities to more than one body member scheduled in par. (v) (now par. 20) and the disability was less than total loss of such members our courts interpreted par. w (now par. 22) to require that "compensation ... be determined as a percentage of total disability." Ibid. Where, as in Orlando v. Ferguson & Son, supra "three members of the body designated in paragraph (v) [now par. 20] were injured, the partial disability of the three members was computed `upon the basis of the percentage of total and permanent disability reasonably found to have been produced by the several injuries considered collectively and with due regard to their cumulative effect.'" Cooper, supra at 182.
Paragraph 22 (formerly par. w) thus is the source for calculation of less than total disability to a nonscheduled part of the body. Everhart v. Newark Cleaning & Dyeing Co., supra 119 *381 N.J.L. at 110-111. The disability in such "lesser or other" case is "determined as a percentage of total and permanent disability," the duration of which is required to be "a corresponding portion of 600 weeks." N.J.S.A. 34:15-12 c 22. Where the case involves "lesser" injury than total loss of two or more of the body members scheduled in par. 20, i.e., "both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof as a result of any one accident" such lesser disability also is calculated as a percentage of total and permanent disability, using 600 weeks as the basis for computation. Ibid. (emphasis supplied); Cooper, supra 137 N.J.L. at 182. Injuries and disabilities that are "[s]eparate and distinct classes of partial incapacity, although resulting from the same accident, are individually compensable." Cooper at 183. A neurosis is clearly of that character. Sigley v. Marathon Razor Blade Co., Inc., 111 N.J.L. 25, 29 (E. & A. 1933). Equally, injury to a scheduled part of the body such as teeth is a separate and distinct class of disability. Cooper, supra 137 N.J.L. at 181-182.
We turn back to the amendment to subsection c requiring that "the number of weeks in the award shall be determined and entered separately for each such disability and the number of weeks for each disability shall not be cumulative when entering an award." These words are commonplace in nature and unambiguous. As used they give no indication of special meaning. In such circumstances the words of the statute are to be given their ordinary and well understood meaning. Levin v. Tp. of Parsippany-Troy Hills, 82 N.J. 174, 182 (1980). The statute should be construed as written rather than according it some unexpressed intention. Dacunzo v. Edgye, 19 N.J. 443, 451 (1955). Equally, we bear in mind Justice Heher's admonition:
The provisions delimiting the scope of the statute are to be fairly construed to effectuate the evident legislative purpose. Nothing is to be read into the statute by judicial construction because of some supposed reason of policy. The primary subject of inquiry is the legislative intention, as expressed in the statute. The reason and spirit of the act, or, in other words, the apparent legislative intent disclosed by the language employed, considered in relation to the subject of the legislation, prevail over its letter; and there is therefore no warrant, in virtue of *382 the rule of liberal construction, or otherwise, for the inclusion of matters not expressly provided, or reasonably to be implied. The rule of liberal construction lends itself, unless carefully guarded, to the judicial exercise of the legislative power. [Everhart v. Newark Cleaning & Dyeing, supra 119 N.J.L. at 110.]
We have already noted our unsuccessful attempt to find the origin of the new amendment in legislative history and committee procedures. Lamentably, the joint legislative statement accompanying the introduction of the 1979 amendments to N.J.S.A. 34:15-12 makes no direct reference to this language. Nevertheless, that statement does convey the impression that the new amendments in general served two major purposes.
... The bill would put significantly more money in the hands of the more seriously injured workers while providing genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that are presently among the highest in the nation. [Joint legislative statement accompanying Senate Bill 802 and Assembly Bill 840, L. 1979, c. 283, § 5 (1979); emphasis supplied]
In our judgment the clear legislative purpose in enacting the amendment here considered was to provide meaningful compensation cost containment to employers. Under the "Disability Wage and Compensation Schedule" of N.J.S.A. 34:15-12c the sliding scale of dollars payable weekly to a worker increases in proportion to the degree of disability. In this manner more money is indeed put in the hands of the more seriously injured worker, but where disabilities are distinct and separable the number of weeks allocable for each disability must be separately entered, and not stacked on each other, or a worker who is not truly 50% disabled may achieve that result in dollars.
It is apparent from the cases we have discussed that prior to the 1979 amendments disabilities were statutorily and judicially separable, and yet in instances where two or more members scheduled in par. v (now par. 20) were affected they were combined, in terms of partial permanent disability, where the evidence demonstrated that the two injuries had such collective and cumulative effect. We do not take as an accurate observation the view of the compensation judge in Tucker's case that Tucker's several disabilities must be "considered as one entity *383 and expressed in terms of partial total since several major members have been affected." Sigley, Cooper and Orlando demonstrate that injuries of "[s]eparate and distinct classes of partial incapacity, though resulting from the same accident, are individually compensable." Cooper, supra 137 N.J.L. at 182-183. They were so treated in the past but because compensation was then payable at fixed weekly rates, regardless of the number of weeks allocable, it did not matter that, as in Cooper, 55% of partial permanent was awarded for the cumulative injury to Cooper's eyes and his 5% neurosis was added making "60 per cent of permanent total disability or 300 weeks at petitioner's rate per week." Likewise, the additional payment to him of 28 weeks at the same rate for the separate and distinct injury to his teeth was of no monetary consequence from the standpoint of his weekly rate. Although the effect was to give him payment for 328 weeks there was no sliding scale of dollars, as there is now, whereby the number of weeks due for disability determines the amount of weekly compensation, and the accumulation of weeks did not increase his employer's compensation costs. It is the new upwardly sliding scale of dollars payable, depending upon the number of weeks allocable to determine disability, that required the need for the Legislature to impose the requirement that separate and distinct disabilities be "determined and entered separately for each such disability" and that they not be cumulatively entered.
It is apparent that the Legislature was aware of the compensation cost problem created by the introduction of the sliding dollar scale and sought to reasonably contain its effects. The fact that the Legislature did not attempt to amend par. 22 clearly indicates legislative accord with the judicial interpretation that where disability is caused to two or more members scheduled in par. 20, "the partial disability ... must be computed `upon the basis of the percentage of total and permanent disability reasonably found to be produced by the several injuries *384 considered collectively and with due regard to their cumulative effect.'" Cooper, supra at 182.
Thus, in Tucker's case where his right leg, right hand, and right arm are disabled there is justification for expressing those disabilities as a single disability. Tucker's employer, on this appeal, does not contend otherwise. The judge of compensation erred, however, in determining that all of Tucker's disabilities must be treated as "a single entity." This error requires a reversal of the judgment entered and a remand for entry of a judgment conforming to this opinion. Tucker's neurosis (5% of partial permanent) is clearly required to be separately entered as to the weeks allocable to that condition. The minor orthopedic disability to his back which amounts to 3% of partial permanent is to be treated in the same fashion.
In Poswiatowski's case, where the disabilities were separate and were so treated, that method of handling the entry of the awards is affirmed. We note, however, a mathematical error by the compensation judge. In averaging the amount awarded in order to arrive at a weekly average payment he used a total of 162 weeks as the dividing factor when 272 weeks was the proper total of weeks to be used. The matter is remanded for the purpose of correction and entry of a proper judgment.[3]
In summary, the judgment in Tucker v. Central Paper Co., A-923-82T3, is reversed and remanded for entry of an award and judgment consistent with this opinion. The judgment in Poswiatowski v. Standard Chemical Co., A-4737-81T3, is affirmed but modified and remanded for entry of a corrected judgment consistent with this opinion.
NOTES
[1] N.J.S.A. 34:15-12 c provided that after January 1, 1982 the specific sliding scale of dollar amounts listed for the first 180 weeks in "the Disability Wage and Compensation Schedule" be replaced by a sliding scale of percentages of SAWW ranging from a low of 20% to 35%. These percentage figures grow by increments of 1%. After 210 weeks, to which 35% of SAWW is allocable, the percentage of SAWW for each succeeding 29-week bracket increases by 5%.
[2] The issue we have under consideration in the present matters was not raised and therefore not considered or decided in Gothelf or in Abdullah v. S.B. Thomas, Inc., 190 N.J. Super. 26 (App.Div. 1983). The attempts by Tucker and by Poswiatowski to analogize the facts of these cases to the issues here presented are without foundation and are rejected.
[3] We are not asked to pass upon this method of averaging weekly payments. It appears to be a device ordered by Commissioner Horn by a directive dated July 11, 1980.