EDWARD SMITH, PETITIONER-APPELLANT CROSS-RESPON-DENT, v. U.S. PIPE & FOUNDRY CO., RESPONDENT-APPEL-LEE CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 12, 1983—Decided October 18, 1983.

Before Judges BISCHOFF, PETRELLA & BRODY.

*Edward Slaughter, Jr.,* argued the cause for appellant (*Pellettieri, Rabstein & Altman,* attorneys).

*David L. Hack* argued the cause for respondent, cross-appellant (*Haskins, Hack, Piro & O'Day,* attorneys).

The opinion of the Court was delivered by

BISCHOFF, P.J.A.D.

This workers' compensation appeal requires us to determine the manner of computation of a compensation award for several functional impairments that are the sequelae of a single traumatic injury. The issue is commonly referred to as "stacking" and implicates that sentence in *N.J.S.A.* 34:15–12 c which was added by *L.* 1979, *c.* 283 and provides:

[W]hen a claim petition alleges more than one disability, the number of weeks in the award shall be determined and entered separately for each such disability and the number of weeks for each disability shall not be cumulative when entering an award.

Prior to this recent amendment to the Workers' Compensation Act, the weeks of compensation awarded for orthopedic, neurological, psychiatric and other disabilities were added together and the weeks were entered cumulatively rather than separately. This was done as a matter of convenience because it made no difference if the weeks awarded were stated separately or cumulated. *N.J.S.A.* 34:15–16. The weekly rate remained the same whether the disability was 1% or 95%. The 1979 amendments adopted a sliding scale of increasing weekly dollar payments through the first 180 weeks of disability. *Gothelf v. Oak Point Dairies of N.J.,* 184 *N.J.Super.* 274, 277 (App.Div.1982). Beyond 180 weeks to 600 weeks there is a substantial increase in the weekly dollar payments; disability is compensated from a low of 35% of the statewide average weekly wage (SAWW) for

disability resulting in an entitlement of 181 to 210 weeks to a maximum of 75% of SAWW for disability falling within the 421 to 600 week bracket. It is, therefore, important under this new amendment to determine whether the weeks of compensation awarded for several functional impairments arising out of a single accident must be stated separately or whether they can be cumulated.

The factual background in this case is not in dispute. On May 19, 1980, petitioner Edward Smith was injured while working for respondent U.S. Pipe & Foundry Co. when a heavy object fell over and onto his right forearm inflicting a severe crushing type injury. He was hospitalized for three months during which period five surgical procedures were performed on him. After two debridement procedures on the arm the radial artery, branches of the radial nerve and wrist extensor tendons were still exposed. An abdominal pedicle graft was performed July 1, 1980. This involved the attachment of his hand to his right upper abdomen for the purpose of grafting skin and subcutaneous tissues of the abdomen to the injured forearm. A skin graft from the right thigh was performed as part of this procedure. Subsequent operations for severence of and revision of the abdominal pedicle flap were followed by extensive physical therapy.

The medical testimony indicated petitioner suffered sequela of the injury, which were orthopedic, cosmetic, neurological and psychiatric in nature.

The judge found petitioner sustained permanent disability due to the injury to his right hand, right leg, and abdomen and also suffered from an anxiety reaction. He described the right hand impairment in the same manner as did the medical experts and declared petitioner disabled to the extent of 50% of the hand. The right leg (donor site) he found to be 5% disabled and awarded 23% partial total or 138.25 weeks at $66 per week for a total of $8,124.50 for the combined disability of the right hand and right leg.

He also found petitioner sustained a disability of 10% of partial total for the cosmetic scarring of the abdomen (the donor site) entitling him to 60 weeks of compensation at the $47 rate or $2,820. Superimposed thereon he found a psychiatric disability, anxiety reaction of 12½ percent partial total entitling him to 75 weeks at the $47 rate or $3,525. Petitioner thus received three separate awards totalling $15,468.67 for 273¼ weeks at the rate of $56.61 per week.

On appeal petitioner challenges only the method of computation of benefits. Respondent cross-appeals.

Petitioner contends that the judge of compensation erred in not cumulating the three awards which would have significantly increased his judgment since it would have advanced him on the sliding scale of weekly benefits. *N.J.S.A.* 34:15–12 c. Respondent, on the other hand, argues the trial judge erred in cumulating the 5% award for right leg and 50% award for the right hand, and properly entered separate awards for the other functional impairments. The awards are not otherwise challenged.

It is apparent that our task is to determine the meaning the Legislature intended to ascribe to "disability" as that term is used in the quoted sentence of *N.J.S.A.* 34:15–12 c.

Both sides agree that statutory language must be given its ordinary and well understood meaning. *Levin v. Parsippany-Troy Hills Tp.*, 82 *N.J.* 174, 182 (1980). And to resolve ambiguities courts may resort to principles of statutory construction and employ intrinsic as well as extrinsic aids, including legislative history. *Levin, supra,* 82 *N.J.* at 182. And where there is ambiguity, "a statute is to be construed as a whole with reference to the system of which it is a part." *State v. Brown,* 22 *N.J.* 405, 415 (1956).

The sentence under examination is new to the Compensation Act. Neither the legislative history nor the available results of committee hearings provide a clue as to its origin. The Joint Legislative Statement accompanying the introduction of the

1979 amendments provides a statement of two somewhat contradictory purposes to be served by the amendments to the Act.

> This bill is a revision of New Jersey Workers' Compensation Law and would make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to the employment.
>
> The bill would put significantly more money into the hands of the more seriously injured workers while providing genuine reform and meaningful cost containment for New Jersey employers from unjustified workers; compensation costs that are presently among the highest in the nation.

The Legislature did not define "disability" as it is here used and the term has an ambiguous application in workers' compensation law.

Disability is used to indicate the extent of impairment as in "The petitioner has a disability of 10% of total", or the type of impairment as in the phrase "The petitioner's disability is orthopedic in nature." It can also mean the impairment itself as in "The petitioner's disability is in the nature of emphysema." See *Mikitka v. Johns-Manville Products Co.*, 139 *N.J.Super.* 66, 72 (App.Div.1976) where the term is used with all three meanings.

*N.J.S.A.* 34:15–12 refers to the nature and extent of the disability. *N.J.S.A.* 34:15–12 a uses the term "temporary disability" to indicate a complete inability to work. Other sections refer to disability, giving the term different shades of meaning. See *N.J.S.A.* 34:15–34 and *N.J.S.A.* 34:15–36.

Although the judge of compensation did not state what meaning he ascribed to "disability" his separate awards for right hand and leg, cosmetic scarring of the abdomen, and neurological anxiety would indicate he interpreted the term "disability" as "type of disability."

The judge recognized the two expressed purposes of the 1979 amendments, *i.e.*, to place significantly more money in the hands of the more seriously injured workers while providing cost containment for New Jersey employers. He concluded that disabilities to major members as set forth in paragraphs 20 and 22 of *N.J.S.A.* 34:15–12 c are to be considered one disability with the appropriate number of weeks stated therefor. The "disabili-

ty would be based on permanent partial rather than the individual members." He accordingly awarded 23% partial total for the combined hand and leg disability. He then ruled that any additional disabilities were to be entered separately and proceeded accordingly with respect to the scarring and psychiatric disability.

An opposing view of the intent and meaning of this section is expressed by the Hon. Fred H. Kumpf, Judge of Compensation, in an article entitled *Occupational Disease Claims Under the Workers' Compensation Reforms,* 12 Seton Hall Law Review, 470 (1982):

The term "disability" in this subsection, however, should not be confused with the separate elements of a disability flowing from a single traumatic event. A worker may as a result of an accident suffer disability which includes orthopedic injuries. It would be incorrect to interpret the language of section 34:15–12(c) to mean that in such an accident the rate of compensation is determined by beginning with the first week in the schedule for each of the elements of the disability. The severely injured worker should be compensated at a progressively higher rate depending on the severity of the injury. If the injury is comprised of several elements, as most severe injuries are, the benefits of the higher rate would be withheld from Petitioner by determining the compensation rate from the beginning of the schedule for each element within the disability. On the contrary, the new section 34:15–12(c) is concerned only with negating any advantage resulting from the misjoinder of more than one disability in a single claim petitioner. A claim for compensation for one accidental injury, though the disability may take several forms, is a claim for disability flowing from the single accident. The section 34:15–12(c) provision has no applicability to a claim alleging one compensable accident.

We are of the view that this interpretation expresses the legislative intent. In the Joint Legislative Statement to which we previously referred there is an explanation of the manner in which compensation rates and benefits were increased. The Statement also indicates how the goal of "cost containment" was achieved:

This legislation would benefit employers by: (1) allowing credits for pre-existing disabilities to employers in the determination of awards for permanent partial and permanent total disability claims; (2) countering the far-reaching effects of Dwyer v. Ford in cardiac claims by requiring that a petitioner prove that the injury or death involved substantial effort or strain which was in excess of the rigors of the claimant's daily living and that the cause of the injury or death was job-related in a material degree; (3) defining permanent partial

disability as a work-related injury or disease, demonstrated by objective medical evidence and diminution of the claimant's work ability; objective medical evidence is understood to mean evidence exceeding the subjective statement of the petitioner; (4) restricting the "odd lot" doctrine by a redefinition of permanent total disability; (5) clarifying the effect of the decision in Brown v. General Airline by permitting compensation judges to enter an award approving settlement in matters where causal relationship, jurisdiction, dependency or liability are in issue, resulting in the payment of a lump sum having the effect of a dismissal of the petition and a complete surrender of any future right to compensation or other benefits arising out of that claim; (6) declaring injuries sustained during recreational or social activities sponsored by the employer to be noncompensable unless such activities are a regular part of the employment; (7) excluding from compensability degenerative changes due to the natural aging process and limiting compensation for occupational diseases to those which are characteristic of and peculiar to a particular employment; (8) establishing relief from the far-reaching effect of the "Going and Coming Rule" decisions by defining and limiting the scope of employment; and (9) precluding retroactive application of the Statute of Limitations to occupational disease claims except in specific enumerated cases involving latent manifestation.

We find it significant that in this list of employers' benefits no mention is made of the sentence in 12 c before us for interpretation. It is a fair inference that if a construction consistent with the judge's determination and respondent's arguments was intended some reference to it as an employer's benefit would be contained in this paragraph. The method adopted by the judge in stating separately the awards for several functional impairments arising out of a single accident does constitute a departure from prior practice.

The object of placing significantly more money in the hands of seriously injured workers would be thwarted by an interpretation of *N.J.S.A.* 34:15–12 c, which denied the injured worker the increased benefits provided in the amendments by determining the compensation rate at the beginning of the scale for each of the component parts of an injury and resulting disability.

We are mindful of the fact that the Workers' Compensation Act is remedial social legislation and it is to be "given liberal construction in order that its beneficent purposes may be accomplished." *Torres v. Trenton Times Newspaper,* 64 *N.J.* 458, 461 (1974). The interpretation provided to the somewhat ambiguous

provision of *N.J.S.A.* 34:15–12 c under consideration by the judge of compensation here would not advance that purpose.

In *Sigley v. Marathon Razor Blade Co., Inc.,* 111 *N.J.L.* 25 (E & A 1933) the petitioner suffered an eye injury with a resultant neurosis. The respondent argued that the neurosis was an incident of the loss of vision and the consequent disability would be fully compensated by the scheduled weeks of compensation for the loss of an eye. The court disagreed and held that even if the neuroses were caused solely by the loss of vision the consequent disability was, nevertheless, compensable. The court said, "They were separate and independent injuries. The fact that each injury resulted from one accident did not make of these a single injury. They were cumulative disabilities distinct in their nature."

We do not view the "separateness" of *Sigley* as a command to state the weeks of compensation for independent injuries separately. A neurosis resulting from an eye injury is separate and distinct in the sense that compensation for a neurosis disability is not included within the scheduled weeks of compensation for the loss of an eye. *N.J.S.A.* 34:15–12 c (16 and 17). Moreover, the language of that case must be viewed with the legislative scheme then extant in mind. The compensation scheme then existent did not provide enhanced benefits for additional disability. It was totally immaterial whether an award was cumulated or stated separately.

█ We are of the view that where, as here, separate and distinct classes of disability are the result of a single traumatic injury, the award of compensation, while separately stated to identify the classes, should be cumulated in computing the award to provide the enhanced benefits available.

█ Respondent has cross-appealed from the "interpretation and application of *N.J.S.A.* 34:15–12 c made by the judge of compensation." Specifically, respondent contends it was error to consider the injury to the leg and the hand together under

section 22 of *N.J.S.A.* 34:15–12 c and award petitioner 23% of permanent partial disability. We disagree.

As we indicated above, the revision of the Workers' Compensation Act effected by the adoption of *L.* 1979, *c.* 283 was extensive. Significantly, the only change made in the reenactment of *N.J.S.A.* 34:15–12 c, paragraphs 20 and 22 was to increase the number of weeks (from 550 to 600) that form the base for the calculation of partial permanent disability.

It is a principle of statutory construction that when the Legislature re-enacts a statute which has been judicially construed, it adopts that judicial interpretation. *Quaremba v. Allan,* 67 *N.J.* 1, 14 (1975); *In re Keogh-Dwyer,* 45 *N.J.* 117, 120 (1965); *Lemke v. Bailey,* 41 *N.J.* 295, 301 (1963). We conclude that the amendment of *N.J.S.A.* 34:15–12 c was not intended to change in any way the pre-existing method of computing and awarding partial permanent disability when that disability results from injury to two or more of the members mentioned in paragraph 20, occurring in one accident. The partial permanent disability resulting therefrom must be computed upon the basis of the percentage of total permanent disability reasonably found to be produced by the several injured members. *Cooper v. Cities Service Oil Co.,* 137 *N.J.L.* 181, 182–83 (E & A 1948). The application and interpretation of the judge on this issue was correct.

Respondent further contends that "the trial judge erred when he lumped together the orthopedic, neurological and cosmetic damage to petitioner's hand." This contention was not seriously advanced at argument and, in any event, we find it to be without merit.

Our conclusion makes it necessary to remand the matter to the compensation court for recomputation of the petitioner's award consistent with the views expressed herein. We note that while the compensation judge was correct in evaluating the leg and hand injuries as a single percentage of partial total permanent, he may have violated the rule in *Vishney v. Empire*

*Steel and Iron Co.*, 87 *N.J.L.* 481 (S.Ct.1915), in which the court held that the disability should not be stated in terms of the sum of the individual impairments but rather as a percentage of the total disability.

It also appears that a mathematical error was made in computing the award for 23% disability. It should have been $7,154 and not $8,124.50. Both instances can be corrected on the remand.

We, therefore, remand the matter to the compensation court for recomputation of the compensation benefits, in a manner consistent with this opinion, so that the weeks awarded for the scarring and psychiatric disabilities are cumulated or "stacked" together with the partial permanent disability awarded for the combined leg and hand injuries and not separately stated. We do not retain jurisdiction.

After our opinion in this case was filed on October 18, 1983, the opinion in *Tucker v. Central Paper Co.*, 191 *N.J.Super.* 371 (App.Div.1983) was approved for publication October 19, 1983. To the extent that case is in conflict with our determination herein, we decline to follow it.