CAROLE RAE FAGAN, PETITIONER-RESPONDENT, v. CITY OF ATLANTIC CITY, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 27, 1983—Decided October 21, 1983.

Before Judges MICHELS, KING and EDWARD GAULKIN.

*Gormley & Savio,* for petitioner-respondent (*James P. Savio* on the brief).

*Goldenberg, Mackler & Sayegh,* for respondent-appellant (*Lawrence A. Mintz* on the brief).

The opinion of the court was delivered by

KING, J.A.D.

This appeal from the Division of Workers' Compensation requires us to construe *N.J.S.A.* 34:15–12 c; *L.* 1979, *c.* 283, § 5 effective January 10, 1980.

The claim petition in this matter alleged that Carole Rae Fagan was assaulted during the course of her employment on November 12, 1980. The claim petition described the injuries as a "[f]ractured nose; concussion; laceration of upper right lip; damage to trigeminal nerve; lapse of memory; broken glasses; damage to gums; anxiety reaction."

As a result of the assault, petitioner suffered a broken nose, concussion, and laceration of the upper right lip. Petitioner testified that physiologically she continues to experience numbness on the left side of the face extending into the mouth and

upper left gum, a deviation of the nasal septum to the left, interference with breathing, residual surgical scarring on the upper right lip and severe headaches. Petitioner further testified that she continues to experience sleeplessness, nightmares, slight memory loss, and nervous anxiety, manifested by shortness of breath and heart palpatations.

The matter was heard on October 22, 1982. At that time, the parties stipulated the following: that petitioner was in the employ of the City of Atlantic City on November 12, 1980; that the petitioner sustained compensable injuries on that date at or near 225 North Virginia Avenue in the City of Atlantic City; that at the time of the incident petitioner's gross weekly salary was $227.79, giving rise to payment of a temporary disability award of $159.45 a week for the period between November 12, 1980 and January 7, 1981, and that the temporary disability payments were adequate both as to time and amount. The parties agreed that the only issue before the court was the nature and extent of petitioner's permanent disability, if any.

After hearing testimony of petitioner and reviewing the documents submitted in evidence, the judge found that petitioner sustained permanent disability as follows:

7½% permanent partial disability, stemming from petitioner's nasal fracture with a deviated septum to the left;

7½% permanent partial disability, stemming from severe contusions of the skull, lips and mouth, with numbness from the left side of the nose, down the left side of the face into the entire left gum;

15% permanent partial disability, stemming from petitioner's post traumatic psychoneurosis.

Based on the above findings, the judge granted petitioner a partial permanent disability award of 180 weeks at the average rate of $57.97 per week for a total of $10,314.

This case presents no issue of petitioner's entitlement to compensation. Rather, the sole issue is the method of computation to be used in arriving at petitioner's partial permanent disability award under *N.J.S.A.* 34:15–12 c which, in pertinent part, provides:

... When a claim petition alleges more than one disability, the number of weeks in the award shall be determined and entered separately for each such disability and the number of weeks for each disability shall not be cumulative when entering an award.

The judge of compensation in this case held that petitioner suffered from several disabilities, which he computed as: (1) 7½% stemming from nasal fracture with a deviated septum; (2) 7½% stemming from injuries to the face and head, and resultant numbness; and (3) 15% stemming from post-traumatic psychoneurosis. Computed in accordance with *N.J.S.A.* 35:15–12 c(22), these findings resulted in awards of 45 weeks each for the first and second disability, and 90 weeks for the third disability. Despite this finding of separate disabilities, the judge of compensation combined the weekly awards, finding an aggregate partial permanent disability of 30% and granting petitioner a 180-week award at the average rate of $57.97 per week for a total of $10,314.

The employer argues that the judge of compensation erroneously calculated the petitioner's award by cumulating the number of weeks for each disability in direct contradiction to the language of *N.J.S.A.* 34:15–12 c which states that "the number of weeks for each disability *shall not* be cumulative when entering an award." (Emphasis supplied). The employer contends that the award for each disability should have been determined and entered separately. We agree with the employer and reverse.

To understand the import and reach a proper interpretation of the statutory language in question, it is necessary to understand the effects of the 1979 amendments to the Workers' Compensation Act on the method of calculating disability entitlements. Prior to the 1979 amendments, the Workers' Compensation Act provided no express method of calculating awards for separate disabilities, primarily because the necessity to do so was lacking. Under the prior act the rate for partial permanent disability was paid at a constant maximum $40 per week. Consequently, it was irrelevant whether the number of weeks for separate par-

tial permanent disabilities was calculated separately or cumulatively, as the resultant aggregate monetary award remained the same. Although it was common practice under the prior act to cumulate the weekly awards in arriving at the ultimate monetary award, this was a result of mathematical convenience rather than any mandate of the law. In fact, the case law interpreting the prior act stated that injuries and disabilities that are "[s]eparate and distinct classes of partial incapacity, although resulting from the same accident, are individually compensable." *Cooper v. Cities Service Oil Co.*, 137 *N.J.L.* 181, 182–183 (E. & A.1948). *See also Sigley v. Marathon Razor Blade Co., Inc.*, 111 *N.J.L.* 25, 30–31 (E. & A.1933).

Under the 1979 amendments, *L.* 1979, *c.* 283, § 5, the fixed $40 maximum weekly rate was replaced by a graduated scale of weekly payments. *See N.J.S.A.* 34:15–12 c (Cum.Supp.1983–1984) (Disability Wage and Compensation Schedule). The new graduated or "sliding scale" of weekly dollar payments ranges from $47 weekly, where the adjudicated disability requires payment of 90 weeks or less, up to $82 weekly for the last six weeks of a disability that requires 180 weeks of entitlement. *Ibid.* For entitlements of 180 to 600 weeks there is an even greater increase in weekly dollars payable, ranging from 35% of the statewide average weekly wages (SAWW) for entitlements from 181 to 210 weeks, to a maximum of 75% of SAWW for entitlements falling within the 421 to 600 weeks bracket. *Ibid.* (The SAWW is computed yearly by the Commissioner of Labor and Industry (*see N.J.S.A.* 43:21–3(1) ) and is presently in the mid-$200 range). Under this new, graduated scale an express statutory method of calculating weekly entitlements for separate disabilities becomes crucial to the determination of the ultimate monetary award.

The effect of the new graduated scale on the ultimate monetary award granted is best illustrated by comparing the various methods of computation, using the facts of the present case. Under the prior act, petitioner would be entitled to a total award of $7,200 (180 weeks × $40 maximum weekly rate). Us-

ing the new act's graduated scale and the judge of compensation's method of cumulating the weeks of entitlement for each disability, the petitioner would be entitled to a total award of $10,314 (180 weeks paid according to the graduated scale at $47 weekly for the first 90 weeks and increasing incrementally up to $83 a week for the last six weeks of entitlement). Using the graduated scale and computing each disability separately, petitioner would be entitled to a total award of $8,460 (the aggregate of 45 weeks at $47 a week for the first disability, 45 weeks at $47 for the second, and 90 weeks at $47 for the third).

The latter method, computing petitioner's award separately for each disability, clearly comports with the unambiguous language of *N.J.S.A.* 34:15–12 c which states that "the number of weeks for each disability shall not be cumulative when entering an award." In addition, the legislative history accompanying the 1979 amendments supports the above interpretation. While the joint legislative statement accompanying the 1979 amendments to *N.J.S.A.* 34:15–12 c does not specifically address the statutory language in question before us, the purposes of the amendments as stated in that document support the finding of separate awards for the three distinct disabilities found in this case. *See* Joint Legislative Statement accompanying *Senate Bill* 802 (1979) and *Assembly Bill* 840 (1979), *L.* 1979, *c.* 283, § 5. The joint legislative statement conveys the two major purposes of the new amendments. The first is to "put more money in the hands of the more seriously injured workers...." *Ibid.* The second is to provide "genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation costs that are presently among the highest in the nation." *Ibid.*

In our judgment a legislative purpose in enacting the amendment here considered was to provide meaningful compensation cost containment to employers. Under the "Disability Wage and Compensation Schedule" of *N.J.S.A.* 34:15–12 c the sliding scale of dollars payable weekly to a worker increases in proportion to the seriousness of disability. In this manner more money

is put in the hands of the more seriously injured worker but where disabilities are distinct, separate and not severe, the number of weeks allocable for each disability must be separately entered and not stacked on each other or a worker who is not truly severely disabled as a functioning economic unit may achieve that result in dollars. *Tucker v. Central Paper Co.,* 191 *N.J.Super.* 371, 376, 380, 466 *A.*2d 1315 (App.Div.1983).

We conclude that the Legislature was aware of the compensation cost problem created by the introduction of the sliding dollar scale and sought to reasonably contain its effects by requiring separate disabilities be compensated separately and not cumulatively.

We disagree with petitioner's contention that the language of the 1979 amendment under consideration should apply primarily to the allegation of two or more separate disabilities in the same occupational exposure claim petition and not to "separate elements of a disability flowing from a single traumatic event." Kumpf, "Occupational Disease Claims Under the Workers' Compensation Reform," 12 *Seton Hall L.Rev.* 470, 483 (1982). This contention is not supported by the unambiguous language of *N.J.S.A.* 34:15–12 c, our reading of the legislative history or the relevant case law.

For the reasons stated above, the judgment is reversed and remanded for entry of an award treating each disability separately rather than cumulatively.